No. 33,982

M. A. GORRILL, *Appellee*, v. MELVIN H. GOFF, *Appellant*.

(84 P. 2d 953)

Opinion filed December 10, 1938.

*A. B. Mitchell,* of Lawrence, for the appellant.

*M. A. Gorrill, Henry H. Asher* and *Clarence M. Gorrill,* all of Lawrence, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action on a promissory note. Judgment went for plaintiff, and the defendant has appealed.

Appellee urges the appeal should be dismissed. The court permitted oral arguments on the merits after appellant had amended his abstract to include specifications of error. It gave appellee additional time to file a counter abstract and brief. The latter has been filed. No motion for a new trial was filed by appellant, but the opinion will disclose facts showing no motion for a new trial was necessary. We shall therefore decide the case on its merits.

The only issue involved is whether the action was barred. That depends upon whether a certain credit placed upon the note by the owner and holder thereof, together with circumstances and facts to be hereafter narrated, tolled the statute of limitations. The note bore the date of March 1, 1928, and was due March 1, 1930. It contained certain credits which are not disputed. The credit entry endorsed by the holder of the note and here involved was the last

one, which reads: "October 1, 1932, paid on int. and principal by credit of acct., $60.10."

Defendant's answer denied he had made such partial payment, alleged such credit was endorsed upon the note without his knowledge or consent, and denied the entry by plaintiff constituted a partial payment upon the note. The answer further asserted the claim was barred by the statute of limitations. Plaintiff filed a reply alleging facts designed to constitute ratification of the credit entry, and further alleged such facts constituted an estoppel to the defense pleaded.

A general verdict was rendered for the defendant. Special questions covering the issues of fact thus joined were submitted to the jury. The special verdict was as follows:

"1. Were the defendant, Melvin H. Goff, and one Max Wiedemann in partnership on or about October 1, 1932, and did they have an account, at that time, for $80.10 against the plaintiff, M. A. Gorrill, for repairs (parts) and labor upon his automobile? A. Yes.

"2. If you answered question No. 1 in the affirmative, was a statement of this account presented by Max Wiedemann on or about October 1, 1932, to Mr. Gorrill for payment? A. Yes.

"3. Was there on or shortly after October 1, 1932, an entry made on the partnership books of Wiedemann and Goff, of a charge to the defendant, Melvin H. Goff, of $60.10, for credit by plaintiff, Gorrill, on his note against Goff? A. No.

"4. Did the defendant, Melvin H. Goff, know on October 1, 1932, or immediately thereafter that the bill of Wiedemann and Goff had been presented, and that the plaintiff had given credit on his note for the sum of $60.10 and paid $20 by check to the partnership of Wiedemann and Goff? A. Only by Wiedemann's statement.

"5. Did the defendant, Melvin H. Goff, at any time or times go to the office of M. A. Gorrill *and examine said note* with the said credit of $60.10 endorsed thereon and ascertain the balance due on said note after the application of said credit and state to the said M. A. Gorrill that, 'I guess it is all right'? A. No evidence that note was examined by Goff.

"6. Did the defendant, Melvin H. Goff, at any time or in any of the conversations had between him and the said plaintiff, M. A. Gorrill, raise any objection or make any protest against the endorsement of said credit upon said note? A. No.

"7. Did the said M. A. Gorrill, at any time prior to the filing of this action, have any knowledge or notice communicated to him, by word or action, of the said Melvin H. Goff, that the said Melvin H. Goff did not acquiesce in or approve of the making of said credit on said note? A. No.

"8. Was the conduct of the said Melvin H. Goff from October 1, 1932, up to the time of filing this suit, such as to cause any ordinary person to believe that he acquiesced in and approved the application of said credit upon said note? A. No.

"9. Did Goff know of the fact that Gorrill had placed a credit of $60.10 on the note?  A. Only by Wiedemann's statement.

"10. If you answer question No. 9 'yes,' then did Goff later ratify such credit by word or act?  A. No.

"11. If you answer question No. 10 'yes,' then state what Goff did to ratify such credit.  A.————." (Italics inserted.)

Appellee filed a motion to set aside the general verdict and for judgment in his favor upon the special verdict.  He also filed a motion for a new trial.  The former motion was sustained and the latter motion overruled.  In order that the reader may have a clear understanding of exactly what the pertinent portion of the journal entry contained, we quote the following:

"And the court, after considering all of the evidence and being fully advised in the premises, finds that the motion of the plaintiff to set aside the general verdict in this cause, heretofore rendered by the jury, and to render judgment for the plaintiff upon the special verdict heretofore rendered by the jury should be sustained and that the plaintiff is entitled upon the evidence and said special verdict to a judgment as prayed for and that the motion of the plaintiff for a new trial should be overruled.

"It is, therefore, ordered, adjudged and decreed by the court that the general verdict heretofore rendered by the jury in this cause be and the same is hereby set aside and held for naught, and that upon the special verdict the plaintiff have and recover a judgment against the defendant, . . ."

Appellant's first specification of error is, the trial court erred in rendered judgment for the plaintiff (appellee) upon the record.  The second specification of error is, the trial court erred in overruling the defendant's (appellant's) motion for judgment upon the special questions and general verdict.  The journal entry does not recite the latter motion.  It may have been made orally.  The record does not disclose.  That such motion was made, appellee does not deny, its brief being silent in that regard.

We shall now discuss the first specifications of error, namely, that the trial court erred in rendering judgment for the plaintiff upon the record.  The fact-finding portion of the journal entry is confusing in this regard.  It will be observed it first finds plaintiff's motion to set aside the general verdict and to render judgment for plaintiff upon the special verdict should be sustained.  It then follows with the statement, "The plaintiff is entitled *upon the evidence and said special verdict* to a judgment as prayed for."  (Italics inserted.)  In the judgment portion of the journal entry, the general verdict is set aside and judgment is rendered in favor of the plaintiff upon the special verdict alone.

It is appellant's contention that in view of the fact the special

verdict expressly covered the pertinent issues of fact, the general verdict must stand unless the special verdict compels it to fall. He urges the special verdict does not have that effect and that it is in harmony with the general verdict. He contends specific issues of fact were clearly joined by the pleadings and that it was the province of the jury to determine those facts. He urges the jury did determine each of the salient facts relative to both the original right of the plaintiff to credit the payment on the note and whether defendant subsequently ratified such payment. He insists those questions of fact, and especially the question of ratification of the credit, which is the real issue, were definitely submitted to the jury, under instructions not complained of, and were determined in his favor upon a sharp conflict of evidence. He therefore insists he is entitled to judgment on both the special and the general verdicts.

Let us turn to the special verdict. The majority of the court are of the opinion the general verdict was properly set aside for the reason the special verdict discloses defendant's ratification of the credit endorsement. The following are the views of the majority, as the writer understands them, relative to the effect of the special findings.

The answers to questions numbers four and nine are each tantamount to the answer "yes." The answers actually made pertain to the method by which defendant discovered that plaintiff had endorsed the credit, and carry with them affirmative answers to those questions. Answer number five is interpreted as an affirmative answer to all parts of question number five, except the portion of that question which pertains to the *examination of the note by the defendant* after the credit had been endorsed thereon. In other words, it is the opinion of the court that answer number five, combined with the real answers, namely, the answers "yes," to questions numbers four and nine, means that the defendant knew plaintiff had made the endorsement of the credit and ratified it. Answers numbers six and seven indicate the defendant made no objection or protest to the credit, and that plaintiff at no time prior to the suit had any knowledge or notice communicated to him by the defendant that he did not acquiesce in or approve the credit endorsement. Finding number eight is somewhat in the nature of a conclusion and should not be construed as vitiating the effect of the other findings. Finding number ten is inconsistent with the interpretation previously given to finding number five and other pertinent findings. The

court, therefore, holds the special verdict discloses ratification of the credit endorsement. G. S. 1935, 60-312, provides:

"In any case founded on contract, when any part of the principal or interest shall have been paid, or an acknowledgment of an existing liability, debt or claim, or any promise to pay the same, shall have been made, an action may be brought in such case within the period 'prescribed for the same, after such payment, acknowledgment or promise; but such acknowledgment or promise must be in writing, signed by the party to be charged thereby."

From this statute it is apparent three things may toll the statute of limitations. One is a payment. The others are acknowledgment of the debt in writing or a promise in writing to pay the debt, each signed by the party to be charged thereby. A payment obviously may be made otherwise than in writing. A payment, like any other act, may be ratified. The court having interpreted the special verdict as disclosing an express ratification by the defendant, no treatment of the subject of an implied ratification is necessary. Appellant relies upon the following cases: *Good v. Ehrlich,* 67 Kan. 94, 72 Pac. 545; *Shanks v. Louthan,* 79 Kan. 363, 99 Pac. 613; *Elmore v. Fanning,* 85 Kan. 501, 117 Pac. 1019; *Wichita Sanitarium v. Bierschbach,* 136 Kan. 84, 12 P. 2d 806; *Pessemier v. Zeller,* 144 Kan. 726, 62 P. 2d 882; *First Nat'l Bank v. Signs,* 146 Kan. 801, 73 P. 2d 1109. A careful analysis of these cases will disclose they pertain to the question of original authority to make the credit endorsement, or to cases where the debtor had knowledge of the credit endorsement, and did not expressly ratify the endorsement, but simply failed to object to or make protest against such endorsement, and to cases which pertain to the provisions of G. S. 1935, 60-312, which relate to the acknowledgment of the debt or a promise to pay the debt.

In view of the court's interpretation of the special verdict all that need be determined in the instant case is that a payment may be approved by an express oral ratification. In other words, the court holds that ratification of a payment is not that kind of acknowledgment of the debt which, under G. S. 1935, 60-312, must be in writing.

Appellant stresses statements from cases such as the statement contained in *Elmore v. Fanning,* which was:

"A payment, to toll the statute, must be made under such circumstances as to amount to an acknowledgment of an existing liability. (*Shanks v. Louthan,* 79 Kan. 363, 99 Pac. 613.)" (p. 504.)

That is a correct statement of the law. When, however, a credit endorsement on a note, not originally authorized to be made by the maker, is nevertheless ratified by the maker, it becomes as binding on him as though he had made the original payment under circumstances amounting to an acknowledgment of the debt. The reason payment tolls the statute is that payment is an acknowledgment of an existing debt and an implied promise to pay the remainder. (*Good v. Ehrlich,* supra; *Pessemier v. Zeller,* supra, p. 729.) In most jurisdictions payment is regarded as the best of all acknowledgments. (37 C. J. 1142.) Under G. S. 1935, 60-312, the particular form of acknowledgment, known as payment, is not required to be in writing. The reason is obvious. Payment is an executed acknowledgment and speaks for itself. It requires no writing to establish it.

Appellee directs our attention to the fact defendant permitted the automobile repair account to outlaw without presenting it to plaintiff for payment. He urges that fact showed ratification of the credit endorsement on the note. Such fact did not constitute ratification as a matter of law. Defendant testified and the jury found that the credit of $60.10 was not charged against the defendant on the partnership books. Defendant testified in substance that when the partnership settlement was made it was made without reference to outstanding accounts. Under these circumstances we cannot say, nor could the trial court have said, plaintiff's account with the partnership became the personal property of the defendant so as to permit defendant to enforce it, in his individual capacity, against the plaintiff. The fact it was not presented to plaintiff for payment was, however, a proper circumstance for the consideration of the jury on the question of ratification, under proper instructions. Appellee does not contend the instructions did not touch that feature of the case, or that the instructions for any reason were inadequate to cover it. The effect of defendant's failure to present that account is therefore merged in the special findings on the subject of ratification, and also in the general verdict. Appellee does not contend the special findings did not cover the entire record. In fact, he moved for judgment on them alone, and this court is approving the judgment on the strength of those findings. It follows the judgment must be affirmed. It is so ordered.

WEDELL, J. (dissenting): My clear persuasion compels this dissent. I agree that a credit endorsement, effectually ratified, will toll the statute of limitations. I disagree with the holding of the court

that the credit endorsement was expressly ratified. I contend mere failure to object to or protest against a credit entry made by the payee on a note, without proper authorization, will not toll the statute of limitations. I am compelled to disagree with the majority in holding the special verdict disclosed an express ratification of the credit endorsement. I am clearly of the opinion that each of the special findings, when properly considered, and especially when considered as a whole, as they must be, are not only in harmony with each other but plainly in harmony with the general verdict which was rendered in favor of the defendant.

Before I discuss the above aspects of the case, I desire to make a few preliminary observations. Obviously, what I may personally think of the evidence upon which the jury reached its conclusions is wholly immaterial. That is also true about a trial court in an action, such as this, in which it was the province of the jury to determine the weight and credibility of the evidence. The evidence was in sharp conflict on every essential point. This was not an equity case in which the jury functioned only in advisory capacity. It was not primarily an equity case in which certain facts needed to be determined only incidentally. It was an action at law, on a promissory note, and the element of intent to ratify was essential and was a question for the jury. The lack of intent to ratify was merged in the general verdict in favor of the defendant, and the general verdict must stand unless the special verdict clearly overthrows it. If the trial court for any reason satisfactory to it was dissatisfied with the conduct of the jury or with its verdict, it had the right to set aside both the special and general verdicts and to grant a new trial. That it did not do. The trial court permitted the special verdict to stand. It must therefore be assumed it believed the respective findings were supported by substantial evidence. Moreover, it is not contended the special findings do not cover every issue in the case, and indeed they do. There was therefore no occasion to deal with the record outside the special findings. Had the trial court been of the opinion the special verdict was sufficient to support a judgment in favor of the plaintiff, there would have been no occasion for the recitation, in the fact-finding portion of the journal entry, to the effect that plaintiff was entitled to judgment upon the *evidence and the special verdict*, and then to render judgment on the special verdict alone.

One other preliminary observation may not be amiss. It is well to bear in mind, at the outset, that appellant's partner, Mr. Wiede-

mann, had no authority whatsoever, by reason of his partnership relation, to bind the defendant by a credit endorsement, which he (Mr. Wiedemann) permitted the plaintiff to make on the individual note which defendant owed to plaintiff, and which note had no relation whatsoever to the partnership business. Nor does the appellee contend a partner has such authority.

Let us candidly examine the special verdict. In doing so we shall bear in mind the fact that appellee does not contend that a single special finding was unsupported by competent and substantial evidence. He did not ask to have a single finding set aside upon any ground. He moved for judgment on them. We need therefore determine only whether the special verdict discloses such a clear intent on the part of the jury to find that defendant ratified the credit entry as to overthrow the lack of such intent which inheres in the general verdict. There cannot be and there is no dispute relative to answers numbers one and two. There can be no dispute in this court concerning the correctness of answer number three. It is based upon substantial evidence. The old partnership had been dissolved and the partnership records were no longer in existence. It is not contended the evidence did not support the finding. We are therefore bound by the adjudicated fact that the credit was not charged to the defendant in the partnership business. I freely concur in this court's interpretation of answers numbers four and nine. I agree those answers were each tantamount to the answer "yes." It will be found the jury also so regarded them in its answer to finding number ten. I do, however, see in the answers to questions four and nine the plain intention of the jury to make clear the fact that, in their opinion, defendant had not discussed with plaintiff *his right to endorse the credit on the note,* but that defendant first obtained that information from his partner after the credit had been endorsed thereon by the plaintiff.

I am compelled to disagree with the court's interpretation of finding number five. In my opinion the court's interpretation of that finding, especially in view of the particular manner in which that question was deliberately framed, is unwarranted, and is clearly out of harmony with the other findings, and especially with findings eight, nine and ten, which deal expressly with the subject of ratification. The answer which plaintiff desired to have the jury make to question number five was that defendant had said to the plaintiff with reference to the note, *after defendant had examined it,* "I guess

it is all right." A reading of the question, however, will clearly disclose that such desired answer was based, expressly and entirely, upon a former examination of the note by the defendant with the credit endorsed thereon. The jury examined the question and determined there had been no examination of the note by the defendant. There was no motion to set the finding aside, and on appeal we are, of course, obliged to accept it as true. That there was evidence the note had never been exhibited by plaintiff to defendant, after the credit endorsement, is not denied. Under these circumstances the court's interpretation of finding number five, in my opinion, is unwarranted, even without reference to other findings. It is, of course, elementary that the various special findings must be harmonized whenever it is reasonably possible to harmonize them. The rule is to give them such a construction, if possible, as will bring them into harmony and thus uphold the general verdict. (*Jordan v. Austin Securities Co.*, 142 Kan. 631, 649, 51 P. 2d 38.) The reason for construing the special findings so as to harmonize them with the general verdict, if possible, is that every reasonable presumption is indulged in favor of the general verdict. (*Parmenter v. Morrison*, 130 Kan. 707, 710, 288 Pac. 582.) In *Lesher v. Carbon Coal Co.*, 127 Kan. 34, 272 Pac. 155, it was held:

"In the consideration of the question of inconsistency between the answers to special questions and the general verdict nothing will be presumed in aid of the special findings, and every reasonable presumption will be indulged in favor of the general verdict.

"Where special findings are fairly susceptible of more than one interpretation the one which harmonizes with the general verdict should be adopted rather than the one which points to inconsistency." (Syl. ¶¶ 1, 2.)

See, also, *Jordan v. Austin Securities Co.*, supra.

In the instant case there is little, if any, trouble in harmonizing the findings. The proper construction of finding number five, as in this opinion indicated, leaves it in complete harmony with those findings which effectively touch the subject of ratification. The construction placed on finding number five, by the court, places it in hopeless conflict with both the intent and substance of other definite findings on the subject of ratification as expressly shown by findings eight, nine and ten. Before we analyze the last-mentioned findings it will be well to note findings numbers six and seven, which are to the effect defendant did not make or communicate any objection as to the credit which was endorsed on the note. I shall show later that mere silence, or failure to object, does not constitute ef-

fectual ratification to stop the running of the statute of limitations. The real question was whether in the opinion of the jury the defendant, under all the circumstances, intended to acquiesce in and approve the endorsement of the credit. The jury by its general verdict said he did not. The jury, however, also specifically found the conduct of defendant was not such as to cause any ordinary person to believe defendant acquiesced in and approved the endorsement of the credit. I confess I am unable to understand how that finding can be construed to be in the nature of a conclusion. If, however, it is open to the construction of constituting a conclusion, then that conclusion of the jury is the defendant did not intend to ratify and did not ratify the credit endorsement. That was a general finding and it is in harmony with the general verdict. In my opinion it was a square-toed finding there was no ratification at any time. If that finding constitutes an objectionable conclusion, then so does the standard question which is general in its character, and which this court has at all times permitted in negligence cases and in many others. In negligence cases the question is repeatedly asked, "Do you find the defendant guilty of negligence?" Of course, that question covers the entire record. Of course, that question always involves the further questions of whether defendant's conduct was that of an ordinarily reasonable person, and whether an ordinarily reasonable person would believe he was negligent. In fact, the jury would be so instructed. It may be said such a general question is ordinarily followed with the more specific question, such as the following, "If you answer the preceding question in the affirmative, then state in what such negligence consisted." That is just what was done in the instant case in questions nine, ten and eleven. In my opinion, it is entirely too narrow and technical a view to throw overboard so important a finding as finding number eight, on the theory it constitutes a conclusion or is in the nature of a conclusion, and thus ignore or minimize the clear intention of the jury to specifically find thereby that defendant had not by his conduct acquiesced and approved the credit endorsement.

There is, however, still another barrier which, in my opinion, clearly precludes the construction placed by the court upon finding number five. That is finding number ten. I have conceded answer number nine may be construed as tantamount to the answer "yes." So did the jury in its finding number ten. Findings nine, ten and eleven are:

"9. Did Goff know of the fact that Gorrill had placed a credit of $60.10 on the note? A. Only by Wiedemann's statement.

"10. If you answer question No. 9 'yes,' then did Goff later ratify such credit by word or act? A. No.

"11. If you answer question No. 10 'yes,' then state what Goff did to ratify such credit. A. ———.''

I fail to see how it can be doubted that the last quoted findings likewise specifically disclose a failure of ratification. Certainly it cannot be contended the last-quoted findings constitute a conclusion. It seems to me the jury plainly indicated by its various findings that, in its opinion, defendant had not at any time ratified the credit endorsement by *word or act*. It seems to me they also clearly intended to find, as disclosed by finding eight, that the *conduct* of defendant, which includes his failure to protest, was not such as to cause the plaintiff to believe the defendant acquiesced in and approved the credit application.

Did the mere failure of defendant to object to or protest against the credit endorsement, as indicated by findings six and seven, constitute payment? Of course it did not. Endorsements by the payee of payments do not operate to interrupt the running of the statute. (*Liphart v. Myers,* 97 Kan. 686, 156 Pac. 693; *Pessemier v. Zeller,* 144 Kan. 726, 62 P. 2d 882; 37 C. J. 1150.) The reason is obvious. Endorsements do not constitute payments. A creditor cannot make himself the agent of the debtor to such an extent as to make an act done by him operate as a new promise on the part of the debtor to pay himself. (*Pessemier v. Zeller,* supra.) Then did the mere silence of the defendant work a ratification of the credit endorsement? Other courts and this court have expressly held it did not. The basic reasoning of that principle is that a payment must be voluntary and show an intentional and affirmative acknowledgment of the debt as an existing liability. (*Good v. Ehrlich,* 67 Kan. 94, 72 Pac. 545; *Shanks v. Louthan,* 79 Kan. 363, 99 Pac. 613; *Pessemier v. Zeller,* supra; 17 R. C. L. 923, 927; annotation, 107 A. L. R. 1527.) Obviously if the payment itself is required to be made under circumstances indicating an actual affirmative intention of the maker to pay the debt, ratification of the payment could not be effected by mere silence or failure to protest against the credit entry. In the case of *Good v. Ehrlich,* supra, this court quoted from Wood on Limitations, as follows:

" 'In order to make a money payment a part payment within the statute, it must be shown to be a payment of a portion of an admitted debt, and paid to

and accepted by the creditor as such, accompanied by circumstances amounting to an absolute and unqualified acknowledgment of more being due, from which a promise may be inferred to pay the remainder. In order to have that effect, it must . . . appear . . . that the payment was made under such circumstances as warrant a jury in finding an implied promise to pay the balance; and if the payment was made under such circumstances as to rebut any such promise, it does not affect the operation of the statute.'" (p. 97.)

In the case of *Shanks v. Louthan*, supra, it was held:

"When a mortgagee in possession of the mortgaged real estate by tenant applies the rents received thereon to the payment of taxes and for repairs, and endorses the balance as payments upon the note secured by the mortgage, with the mortgagor's knowledge but without any direction to do so or other authority than such as may be implied from these facts, such endorsements do not remove the bar of the statute of limitations in an action to collect the mortgage debt." (Syl.)

In the case of *Pessemier v. Zeller*, supra, the identical question of silence or failure to object or communicate a protest with regard to the credit endorsement on a note was involved. We affirmed the judgment of the trial court which sustained defendant's motion for judgment on the pleadings. It was there said:

"Defendant admits the receiver had a right to appropriate the deposit, but denies that the receiver's appropriation and application of the deposit as a credit on the note constituted a payment by him as debtor and thus tolled the statute. R. S. 60-312 provides for the tolling of the statute of limitations by payment or acknowledgment of liability, debt or claim, or by promise to pay the same. The acknowledgment or promise under the statute must be in writing. No such writing is pleaded. Was the application of the credit by the receiver a payment by defendant? We know of no statute or decision, and none is cited by plaintiff, to the effect that a receiver of an insolvent bank is the authorized agent of a depositor for the purpose of acknowledging a depositor's existing liability on a note of the bank. Were this the law then a creditor could apply a credit and thereby make a promise to himself that the debtor would pay the new obligation. The reason payment tolls the statute is that payment is an acknowledgment of an existing debt and an implied promise to pay the remainder." (p. 728.)

In commenting further on the effect of defendant's failure to object to the credit endorsement, we said:

"No affirmative intention of the debtor to have the deposit credited on the note is alleged, and none can be deduced from the facts pleaded. The most that can be said is that the debtor did nothing. That was not a deliberate voluntary acknowledgment of an existing debt. That did not revive the note. That did not create a new promise to pay the residue. It did not work an estoppel to plead the statute of limitations." (p. 730.)

In the Pessemier case will be found numerous authorities to the

effect that mere silence or failure to protest against a credit entry on a note does not constitute an affirmative intention to approve a payment endorsed by a payee without the maker's original knowledge or consent. (p. 729.)

Appellee contends the Pessemier case is not in point, for the reason the receiver, under the law, had a right to credit the deposit of the maker on the note, and nothing Zeller could have said or done would have prevented the receiver from doing so.

The contention the Pessemier case is not in point is entirely too broad. That contention is applicable only to the issue of estoppel which was raised in the Pessemier case. The contention is not good on the question of whether silence constitutes an affirmative acknowledgment of the debt. Two issues were presented and squarely decided in the Pessemier case: The first was whether mere silence on the part of the maker, even where the receiver had authority to make the credit endorsement, constituted a voluntary acknowledgment of an existing liability and a promise to pay the same, and thus toll the statute of limitations. We said it did not. In that respect the Pessemier case is squarely in point and for that purpose it is here cited. On that particular point the instant case is much stronger in favor of the debtor than was the Pessemier case. If mere failure of a debtor to object to a credit endorsement does not constitute a deliberate and voluntary acknowledgment of a debt for the purpose of tolling the statute of limitations where the creditor has authority, by operation of law, to make the credit endorsement, then how can mere silence on the part of a debtor toll the statute where the creditor has not authority to make the credit endorsement? Obviously it cannot. The other issue in the Pessemier case was whether silence of the debtor worked an estoppel. On that issue appellee's contention that nothing Zeller could have said or done would have altered the legal right of the receiver to endorse the credit on the note is sound. That, however, is not the point on which the Pessemier case is here cited. If the Pessemier case is not sound authority in support of the proposition for which I am here citing it, then that part of it should be promptly overruled. There should be no evasion about it. The interpretation I have here placed upon it is the clear import of the law as stated in the first paragraph of the syllabus of that case and it is the interpretation placed upon it elsewhere. See annotation to that case in 107 A. L. R. 1527. Moreover, we need not rely upon decisions from other courts. This court

in the later case of *Hayes v. Reid,* 145 Kan. 51, 64 P. 2d 19, approved the decision in the Pessemier case, and other cases cited in this dissenting opinion on the precise point for which they are here cited. In the Hayes case we said:

"Appellant also contends the payment must be made under such circumstances as to amount to an *actual acknowledgment of the debt by her.* In support of these contentions she cites *Jackson v. Longwell,* 63 Kan. 93, 64 Pac. 991; *Durban v. Knowles,* 66 Kan. 397, 71 Pac. 829; *Good v. Ehrlich,* 67 Kan. 94, 72 Pac. 545; *Shanks v. Louthan,* 79 Kan. 363, 99 Pac. 613; *Liphart v. Myers,* 97 Kan. 686, 156 Pac. 693. *We readily endorse the doctrine announced in these cases.*

"In the recent case of *Pessemier v. Zeller,* 144 Kan. 726, 62 P. 2d 882, a deposit credit of the maker of the note was applied on the note by the receiver of a failed bank, and it was held the statute was not tolled, as the application of the credit did not constitute an actual affirmative intention of the maker to pay upon the note nor a deliberate, voluntary intention on his part to acknowledge an existing liability, nor a promise to pay the same. In the instant case, however, there was abundant evidence the payment tolled the statute as to appellant." (p. 52.) (Italics inserted.)

The conduct which clearly showed a deliberate voluntary acknowledgment of the credit endorsement and the existing liability in the Hayes case are set forth in that opinion. In the still more recent case of *First Nat'l Bank v. Signs,* 146 Kan. 801, 73 P. 2d 1109, in which the question of the effect of the endorsement of a payment on a note by the trustee of a bankrupt estate was involved, this court said:

"We think that our recent case of *Pessemier v. Zeller,* 144 Kan. 726, 62 P. 2d 882, 107 A. L. R. 1523, settles this question. It was there held that the act of a receiver of an insolvent bank in applying the bank deposit of the maker of a past-due note held by the bank did not interrupt the running of the statute. The opinion includes a wealth of authorities to the same effect." (p. 802.)

For the reasons herein stated I cannot concur in the decision of the majority.

THIELE, J., not sitting.