No. 35,211

MAURICE KILLOUGH, *Appellee*, v. SWIFT & COMPANY FERTILIZER WORKS et al., *Appellants*.

(114 P. 2d 831)

Opinion filed July 5, 1941.

*M. B. Munson*, of Pittsburg, for the appellants.

*P. E. Nulton* and *R. L. Letton*, both of Pittsburg, for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action to quiet title to real estate, and from an adverse judgment the defendants appeal. The principal question at the trial was whether the particular real estate was and had been the homestead of plaintiff's predecessor in title at the time plaintiff acquired the title, and arose out of the following circumstances:

Elmer Killough purchased the particular real estate in 1913, and there is no question but that he and his family occupied it as a homestead from the date of purchase until May, 1931. On August 24, 1936, Elmer Killough and wife, for a valuable consideration consisting of a claim for unpaid wages, conveyed the real estate to their son, Maurice Killough, the plaintiff herein. Some time prior to 1928 the elder Killough and another had been engaged in a business venture and became indebted to the defendant Swift & Company Fertilizer Works, hereafter referred to as Swift. Swift brought suit in the city court of Pittsburg, Kan., and recovered a judgment on June 5, 1928. An abstract of the judgment was filed in the district court of Crawford county and by timely execution issued on June 1, 1933, the judgment was kept alive. On December 20, 1937, another execution was issued, and as a consequence the real estate involved was levied upon and sold to the defendant F. G. Holst, the sale being confirmed January 29, 1938, and a certificate of sale being issued to Holst, with redemption period of eighteen months to the judgment debtor, Elmer Killough. The abstract does not disclose affirmatively, but apparently before the redemption period had expired Maurice Killough commenced his quiet-title action against Swift and Holst, who answered denying that plaintiff was the owner in fee simple of the involved real estate, and that if he acquired any interest it was subject to the lien of the judgment in favor of Swift, the facts with reference to the judgment being alleged, and that execution had been issued and the real estate sold to Holst, who was entitled to a sheriff's deed on July 26, 1939. The plaintiff's reply admitted the judgment and sale but alleged that the real estate from February 15, 1913, to August 24, 1936, was the homestead of Elmer Killough and wife and on the latter date had been conveyed to plaintiff for a valuable consideration; that plaintiff then became and ever since had been the owner in fee simple of the real estate. He denied the property was subject to execution and sale to satisfy the Swift judgment and alleged the execution, levy and sale were invalid and without authority of law, and did not affect his title to the real estate and did not create in the defendants or either of them any interest therein.

At the trial there was no controversy of fact concerning the ownership of the real estate by Elmer Killough or that he and his wife had conveyed it to the plaintiff, Maurice Killough; neither was there any dispute of fact concerning the rendition of the judgment nor what followed with respect to it. The sole question was whether

Elmer Killough had abandoned the homestead in 1931, and on that question considerable evidence was received. At the conclusion of the trial, the court made five findings of fact, as follows:

"1. Elmer Killough purchased the property in question, to wit: Lot 7 of Alberty's first addition to the city of Pittsburg, Crawford county, Kansas, same being numbered 201 West Quincy avenue, in February, 1913. His family, consisting of himself, his wife and his son, Maurice, lived in the property continuously until May, 1931, at which time they moved to a rented dwelling in Asbury, Missouri, 15 miles from Pittsburg, Kansas. Elmer Killough was at that time and had been since 1930, engaged in the cream business at Asbury, Missouri, drove to and from his work, his business hours were from 7 in the morning to 9:30 at night, 6 days a week and until noon on Sunday. The business in Asbury was of temporary nature, the only equipment owned by Elmer Killough was an automobile truck and he was engaged on a commission basis. Elmer Killough at no time owned any real estate in Asbury, Missouri, either residence or business property. The removal to Asbury was to enable Mr. Killough, who at the time of the trial was 65 years of age, to be closer to his work early in the morning and returning home late at night. At the time of the removal to Asbury, only a part of the household goods of Elmer Killough and wife were moved. In 1934, Elmer Killough, his wife and son moved to another rented house in Asbury and at that time moved the balance of their household goods from the West Quincy property. In July, 1936, Elmer Killough and wife moved back to the West Quincy property and continued to live there until October, 1936.

"2. (Details conveyance from Elmer Killough and wife to Maurice Killough.)

"3. (Details judgment in favor of Swift and proceedings thereon.)

"4. During the period Elmer Killough and wife were absent from the West Quincy property, it was always their intention and purpose to return to and occupy the West Quincy property as their home. Both Elmer Killough and wife testified that such was at all times their intention and that such intention continued up to and including the time of the conveyance of August 24, 1936. That at any time the business in Asbury did not prove profitable, they intended to move back to their home, the West Quincy property, because they always considered it their home. Mrs. Killough always wanted to come back to the West Quincy property and considered it her home.

"5. Elmer Killough and wife did not in the period between May, 1931, and July, 1936, acquire or establish any homestead and did not during said period intend to abandon their homestead rights in and to the property here in question;"

and concluded as a matter of law that the property was continuously from date of its purchase up to August 24, 1936, the homestead of Elmer Killough and his wife, and that the lien of the judgment to Swift did not attach to the property.

Defendants' objections and exceptions to the findings of fact and conclusions of law and their motion for a new trial were respectively

overruled and denied, and thereafter they perfected their appeal to this court.

In substance, appellants present three contentions:

1. Evidence was erroneously received.

2. Defendants' demurrer to plaintiff's evidence should have been sustained.

3. The findings of fact were not sustained by competent *credible* evidence.

It is contended the trial court erred in permitting Elmer Killough and his wife to testify with respect to their intention to return to the real estate in question and to occupy it as a home. We note from the abstract that before either witness was asked such a question there had been a series of questions, bringing out in detail all of the facts concerning their reasons for leaving; that part of their furniture was left for a time; that they had owned no other dwelling house or other real estate, etc. Appellants cite no authority in support of their contention. In *Blitz v. Metzger*, 119 Kan. 760, 241 Pac. 259, which involved homestead rights, it was held:

"When the intention or purpose of a party is the subject of inquiry—the fact permissible to be proved under the substantive law of the case—the party may testify to his intent and to the purpose of his acts." (Syl. ¶ 3.)

(See, also, *Peoples State Bank v. Hill*, 125 Kan. 308, 263 Pac. 1045; *State v. Myers*, 152 Kan. 56, 102 P. 2d 1023.) There was no error in the admission of evidence.

We find some difficulty in following appellants' argument their demurrer to plaintiff's evidence should have been sustained, as it is in part coupled with criticism of the findings of fact made by the trial court. It may here be said that our examination of the record as abstracted discloses that the findings are supported by the evidence. Appellants seem to place some weight on the fact that Elmer Killough testified that fifty-two days before he made the deed to his son he had decided to give up the homestead. Although the findings of fact did not fix the date, Mrs. Killough testified they moved back into the property the first of July. If that be true, Mr. Killough concluded to pay his son by conveyance of the property at a time when he was actually, as distinguished from constructively, occupying it. To say the least, that testimony did not render plaintiff's evidence subject to demurrer—for it would take concurrence of decision and action to constitute abandonment. The ruling on the demurrer was not erroneous.

And finally, it is contended the findings of fact are not supported by competent *credible* evidence. The argument in support is not that there was no evidence to support the findings, but that the evidence of certain disinterested witnesses compelled a different result. In effect we are asked to weigh the evidence and to conclude the trial court erred. Our reports are replete with cases holding that the credibility of witnesses and the weight to be given their testimony are for the court or jury trying the fact, whose conclusion thereon is conclusive on appeal. Many of these cases may be found under the title Appeal and Error in Hatcher's Kansas Digest, sections 494-505, inclusive, and in West's Kansas Digest, sections 994-1014, inclusive. No good purpose will be served by setting out evidence supporting the trial court's findings, nor in commenting on evidence which would have supported a contrary finding. The findings as made are supported by substantial competent evidence, and under the established rule, even though we might elect to believe certain witnesses and place greater weight on their testimony than the trial court did, we may not substitute our judgment for that of the trial court.

No error has been made to appear and the judgment of the trial court is affirmed.