No. 40, 638

BEN KINDSVATER, *Appellee*, v. LE NORE HINEMAN, formerly LE NORE MUYRES, *Appellant*.

(317 P. 2d 852)

Opinion filed November 9, 1957.

*Earl H. Hatcher*, of Topeka, argued the cause, and *J. E. Mowery, Eugene T. Shields* and *Harold E. Jones*, all of Dighton, were on the briefs for the appellant.

*D. B. Lang*, of Scott City, argued the cause, and *James W. Wallace*, of Scott City, was with him on the briefs for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This was a suit on a promissory note payable to plaintiff (appellee) and executed on December 30, 1948 by W. F. Muyres and his wife, now Le Nore Hineman, defendant (appellant), in the

sum of $5,407.12, due one year after date. The note contained the provision, "For consideration mentioned above the undersigned hereby sells and conveys to said payees the following property, . . . kept . . . Los Angeles County, California . . ." No property was described or listed in the note. The note contained an endorsement, "August 27, 1951 Credit $1525.00." The petition in this action was filed April 4, 1956. Defendant's answer denied that the credit payment on the note was made by her or by anyone authorized to act in her behalf and alleged that therefore plaintiff's cause of action was barred by the statute of limitations. The cause was tried by the court without a jury. From a judgment for plaintiff, defendant appeals.

The note was dated December 30, 1948, and under its terms W. F. Muyres and his then wife, defendant, promised to pay the obligation on December 30, 1949. G. S. 1949, 60-306, *First* provides that a civil action, upon a promise in writing, can only be brought within five years after the cause of action accrues. Under the statute, plaintiff's action filed April 4, 1956 would have been barred, unless the payment credited on the note August 27, 1951 had been made by defendant or by someone authorized to act in her behalf. This requires a brief review of the evidence.

Plaintiff had some correspondence with defendant relative to payment of the note, and in the early part of February, 1951 defendant called plaintiff by telephone in response to a letter from him, advising plaintiff that if any payments were to be made on the note they would have to come from personal property held by W. F. Muyres; that there were two dump trucks and two Fordson tractors with scoops, a 1949 Studebaker pickup and a welder, and that she had some furniture—all of which property was located in California; that plaintiff should go to California and pick it up because her former husband [W. F. Muyres] might sell it; and that if plaintiff wanted to get part of the note paid he should go out there and get what he could and she [defendant] would finish paying off the note when she got the rest of it. Plaintiff's wife testified that defendant said in the mentioned conversation he [plaintiff] should get what he could and apply it on the note; that there was no directive where or when the property should be sold. Plaintiff testified that defendant promised to write him a letter which would reach him in California. In February, 1951 he went to California, where defend-

ant's letter awaited him and in which she advised him of Mr. Muyres' residence and where the property could probably be located. Plaintiff found Mr. Muyres and took possession of the Studebaker pickup truck and a Fordson tractor and, in accordance with Mr. Muyres' instructions, returned them to Kansas to be sold so that the proceeds could be applied on the note.

Plaintiff further testified:

"Q. Isn't it a fact as soon as you returned from California that you took the title to this pickup truck in your name? A. Yes.

"Q. On this tractor, didn't you obtain possession of that on. or about the same time, around the 15th of February, 1951? A. Yes, he [Mr. Muyres] just told me to take it back and try to sell it for him and get what I could get for it. Both of them did.

"Q. Who's he? A. W. F. Muyres and LeNore [defendant] both told me."

On August 27, 1951 plaintiff sold the pickup truck for $775.00. Later, plaintiff realized the sum of $650.00 from his disposition of the tractor. Plaintiff extended the credit on the note as of August 27, 1951, the date he sold the pickup. Subsequent thereto, plaintiff had a conversation with defendant wherein she said:

". . . as soon as she got the money she would finish paying off the note, the difference."

In view of this and other facts and circumstances as disclosed by the record, we are of the opinion that the evidence was sufficient to show defendant's authorization to plaintiff to get the personal property, sell it and apply the proceeds of the sale as a payment on the note, and that as soon as she had the money she would finish paying on the balance. Inherent in the trial court's judgment for the plaintiff was the finding that defendant authorized plaintiff to make the credit on the note. On appeal, findings of fact made by the trial court will not be disturbed if supported by substantial, competent evidence, and in the determination of that question the appellate court does not weigh evidence but is concerned only with whether it supports or tends to support the judgment of the trial court. (*In re Estate of Osborn*, 179 Kan. 365, 295 P. 2d 615, and cases therein cited.) Subsequent to plaintiff endorsing the credit on the note, defendant ratified the payment by stating that as soon as she got the money she would finish paying the difference, and she is now estopped from asserting that she did not authorize plaintiff to credit the note.

In *Gorrill v. Goff*, 148 Kan. 765, 84 P. 2d 953, we stated that a

payment, like any other act, may be ratified and may be approved by express oral ratification; when, however, a credit endorsement on a note not originally authorized to be made by the maker is nevertheless ratified by the maker, it becomes as binding on him as though he had made the original payment under circumstances amounting to an acknowledgment of the debt.

Defendant contends that when the payee under a note takes property from one of the payors for the purpose of applying such property as credit on the note, the credit must be made at the time of taking and not at the time of sale of the property.

It is disclosed by the evidence in the case that defendant, as well as her former husband, Mr. Muyres, directed the plaintiff to take the property, sell it and apply the proceeds on the note. The general rule of law is stated in 70 C. J. S. Payment § 33, p. 243:

"A delivery of personalty by a debtor to his creditor to sell it and apply the proceeds on the debt is not in itself a payment, but payment is effectuated as soon as value is realized from the property to the extent of the amount thereof."

In 34 Am. Jur., Limitation of Actions, § 344, p. 268, it is stated:

"Where a debtor gives his creditor an order on a third person for a sum less than the amount of the debt, with the understanding that whatever is collected thereon shall be applied by the creditor in partial satisfaction of his claim, in determining whether or not the balance of the debt has become barred by the statute of limitations, the payment will be regarded as having been made, not at the time of the giving of the order, but at the time the proceeds of it were received, at least if the creditor acted in good faith in his endeavors to collect them."

The plaintiff took the property February 15, 1951, made an attempt to sell it and finally consummated sale of the pickup truck on August 27, 1951. The question of whether this constituted a reasonable time for the sale of the property was one for the trial court.

Defendant's final contention is that the taking of property of one comaker and giving credit on the note does not constitute payment by the other comaker so as to toll the statute of limitations. In view of our holding as related above, this contention becomes inapplicable under the facts in this case and will not be discussed.

From an examination of the record it appears that the credit payment of August 27, 1951 was authorized and ratified by defendant

and, as a result, the action was not barred by the statute of limitations. The judgment of the trial court is sustained by substantial, competent evidence and is therefore affirmed.

It is so ordered.