No. 42,112

SHERLA LEE FISHER, *Appellee*, v. NELLE PENDLETON, *Appellant*.

(361 P. 2d 864)

Opinion filed May 13, 1961.

*Robert L. NeSmith* of Wichita, argued the cause, and *Justus H. Fugate*, and *James B. Grant*, both of Wichita, were with him on briefs for the appellant.

*Calvin L. McMillan*, of Wichita, argued the cause, and *Robert W. Kaplan*, of Wichita, was with him on the briefs for the appellee.

The opinion of the court was delivered by

ROBB, J.: This is an appeal from the verdict of a jury and judgment of the trial court entered thereon in favor of plaintiff in an action commenced against defendant as a comaker of two promissory notes.

On January 11, 1958, plaintiff filed her petition containing a first cause of action based upon a promissory note dated September 30, 1936, in the sum of $1,000, signed by defendant and her husband, Iris Pendleton, as comakers, and a second cause of action based upon a promissory note dated August 1, 1950, in the sum of $1,-139.50, also signed by defendant and Iris, as comakers.

Plaintiff's petition alleged that from September 30, 1936, to December 27, 1952, the following payments were made on the $1,000 note:

"September 30, 1936, $20.00; November 10, 1936, $20.00; June 5, 1937, $5.00; January 1938, $5.00; February 11, 1938, $5.00; April 1938, $5.00; January 9, 1943, $1.00; January 26, 1943, $20.00; January 19, 1948, $10.00; December 27, 1952, $1.00."

Under her second cause of action plaintiff alleged two payments were made by defendant's husband, Iris; that the first in the sum of $10.00 was made on February 6, 1951, and the other in the sum of $5.00 on December 3, 1955.

Defendant's answer of April 3, 1959, admitted the dates, amounts and executions by her and Iris Pendleton as comakers of the notes but denied that she had known of any payments Iris had made on the notes, and further denied that she had known of, authorized, directed, consented to, acquiesced in, or ratified any alleged payments of principal or interest by Iris or any other person. Defendant further alleged the two causes of action were barred by the five-year statute of limitations. (G. S. 1949, 60-306.) Thus were the issues joined which are now before us for appellate review.

On March 15, 1960, the trial commenced before a jury, and plaintiff, testifying in her own behalf, caused photostat copies of the faces of the two notes to be admitted without the endorsements. When she undertook to testify that she had received payments on the $1,000 note, the following multiple objection to prevent her from answering was immediately lodged:

"We object to the competency of this witness to testify about any transaction had with the deceased person; and for the further reason that it's hearsay, self-serving declarations, and not in the presence of this defendant, and not binding upon this defendant."

The trial court overruled this objection.

Plaintiff finally testified that the first payment on the $1,000 note in the sum of $20.00 was dated September 30, 1936, to which the defense immediately objected for the same reason above set out, and asked that it be understood the same objection went to all similar questions without separate objection being made to each one. The trial court ordered the record to show the objection and also to show they were overruled.

To avoid repetition on the competency phase of this objection, we shall dispose of it now. G. S. 1949, 60-2804, provides:

"No person shall be allowed to testify in his own behalf in respect to any transaction or communication had personally by such party with a deceased person, where either party to the action claims to have acquired title, directly or indirectly from such deceased person, or when the adverse party is the executor, administrator, heir at law, next of kin, surviving partner. . . ."

The foregoing is defendant's authority for her argument that to establish the payments on the notes made by Iris, her deceased husband, conversations and transactions between plaintiff and Iris had

to be shown by plaintiff's testimony and this the statute made her incompetent to do.

The plain and simple answer to defendant's contention is that the defendant was sued on the notes because she was a cosigner thereof and not because she was clothed with one of the capacities set forth in 60-2804. It was never the legislative intent that 60-2804 be used as a defense in this kind of case and no decision of this court is cited by either party, nor have we found any, which upholds such a theory. Defendant cites many of our decisions but a cursory examination of them shows they fall directly and completely within 60-2804 but that the parties had no such relationship as the parties here. Therefore, the trial court was correct in admitting the endorsements on the reverse side of the notes as they were set forth in the petition.

Although plaintiff could successfully show the endorsements as reflecting dates and amounts of payments made by Iris on the notes, the other basic question remains to be determined. This question was raised early in the case by defendant's demurrer to plaintiff's evidence. Did the defendant authorize or ratify the payments by Iris as payments by her?

After establishing the dates and amounts of payments made by Iris, as above stated, plaintiff testified as follows:

"Almost everytime after the first few payments I would have to call. Sometimes Mrs. Pendleton would answer the phone.

"I know it was Mrs. Pendleton because we chatted for a short time. Mrs. Pendleton would ask me regarding my father's health.

. . . . . . . . .

"It was always at her home when I would talk to her about the notes. I would not be able to fix the time exactly, but the greater number of times he came over at my calling.

. . . . . . . . . .

"I recall, I think, this '48 one. He gave me the receipt at the schoolhouse. He came there instead of going to my home.

. . . . . . . . . .

"Quite often, Mrs. Pendleton would answer the phone. On this particular date, I think Mrs. Pendleton answered the phone.

"Q. Do you know whether she did or not?

"A. I think—I feel that I—I recall that she did, I will say, because I do remember our conversation.

"Q. Just tell us what was said.

"A. 'The time is drawing near for the payment of interest on these notes,' or these—'What is your—What idea do you have in regard to taking care of payments on these notes?', or 'The interest is about due'—

"A. (Continuing)—'and I would like to have some action.'

"Q. What did she say?

"A. She said, 'I will talk with Mr. Pendleton.' If Mr. Pendleton were there, he always came to the phone.

"A. He always came to my home immediately.

"Q. What dates did you call, approximately?

"A. I don't recall the dates I called. When the notes were about to expire, I would call.

. . . . . . . . . . . . . .

"Iris Pendleton died November 6, 1956. It was the end of November that I went to—visit Nelle Pendleton.

"At her home on East 21st Street. Mr. R. D. Cahney took me there in his car. Mrs. Pendleton and her sister from Texas was there. After a short conversation in generalities with Mrs. Pendleton concerning her husband's passing. And after a little while I spoke to her in regard to the notes. . Mrs. Pendleton said that she had nothing, she couldn't do anything then.

. . . . . . . . . . . . . .

"She said she was aware of her obligation. She said I have nothing. That is all the conversation we had at the time.

"She hoped in time it might be worked out. She did not elaborate on that statement.

"I saw Nelle Pendleton in the late spring of 1958 in the hallway of the second floor of the old court house after office hours. Either 5 or 5:30. People were leaving their offices. I waited. I had a conversation with her at this time. It was longer than the other one. It was more pointed.

"I asked Mrs. Pendleton if she did recall the telephone calls I had made in regard to the notes. She said 'yes' or at least she agreed with me. I reminded her that periodically I had called her in regard to the payment of these notes, when the interest was due and that she had answered and that Mr. Pendleton had come many times by her telling him. I asked her if she did not feel a moral obligation in regards to these notes. And she said 'yes', and was agreeable and, 'I do.'

"Q. Did she deny those payments of interest?

"A. Mrs. Pendleton at no time denied or protested.

"Q. To what?

"A. To the statements I made."

For purposes of continuity and comparison, we desire to point out that this is the second appearance of this case on appeal. The first (*Fisher v. Pendleton,* 184 Kan. 322, 336 P. 2d 472, 74 A. L. R. 2d 1274) was from a ruling on a demurrer to the petition. That opinion reflects that the allegations of the petition were much stronger than the evidence deduced by plaintiff's testimony, as above quoted. This is not an unusual situation in appeals before this, or any other, appellate court. However, while evidence may not support each and every allegation of a petition, the rule of the degree of proof necessary to support findings of fact made by a jury, as stated and applied in the early case of *C. B. U. P. Rld. Co. v. Hotham,* 22 Kan. 41, is as follows:

". . . even where there is no dispute about the facts in their details, still; if they are stated or proved in such limitless, cumbrous or diffusive detail that different minds of reasonable capacity might honestly differ with respect to whether they in fact constitute or prove negligence or not, the question as to whether they do in fact constitute or prove negligence or not, must be submitted to the jury as a question of fact." (Syl. ¶ 3.)

In determining the sufficiency of plaintiff's evidence to establish ratification or authorization on the part of defendant of the payments by Iris to plaintiff, thus tolling the statute of limitations (G. S. 1949, 60-306), the oft-stated and familiar rule is here applied that for the purpose of rendering a decision on the merits of an action when, as here, plaintiff's evidence has been demurred to, this court reviews only the sufficiency of the evidence and does not weigh it, which duty is identical with that of the trial court. Plaintiff's evidence shall be considered as true and only that part favorable to plaintiff, together with all reasonable inferences to be drawn therefrom, shall be considered. Any evidence unfavorable to plaintiff shall be disregarded, neither contradictory parts nor differences between direct and cross-examination may be weighed, and plaintiff's evidence is to be liberally construed with all doubt resolved against defendant. Accordingly, if, after such consideration, there is any evidence in this record which supports, or tends to support, plaintiff's claim of defendant's ratification or authorization of the payments on the notes by her cosigner, the statute of limitations was tolled by those payments. (*Milwaukee Ins. Co. v. Gas Service Co.*, 185 Kan. 604, 608, 347 P. 2d 394; *Sneed v. KFH Building, Inc.*, 186 Kan. 255, 257, 349 P. 2d 950.)

The following statement appears in plaintiff's brief:

"Although there is no direct evidence that the defendant specifically knew of and consented to the last payments made on each note, there is ample evidence upon which to base a finding that the defendant knew of and consented to each and every payment made. The defendant either knew about a payment being made as the result of a personal telephone call or she knew, as wives almost always do, why and where her husband was going after receiving a telephone call—a presumption unusually strong in this case inasmuch as the evidence disclosed no other business transactions between the parties." (p. 16.)

There appears to be no question but that defendant had no actual or specific knowledge of, or that she directed, ordered, or actually or specifically consented to, the last payments made by Iris on the notes, which are the only payments that could toll the statute of limitations. However, that does not end our inquiry because there

is yet the question of whether there was any evidence that she *ratified* the payments, and especially the last ones, listed on the back of the notes which payments were made by Iris as before stated.

What does the evidence show? Plaintiff would call the Pendleton home, defendant often answered the telephone and Iris would come to the phone, or he would come over to plaintiff's home to make some payment on the notes and interest. Those portions of plaintiff's testimony heretofore quoted show that when plaintiff called by telephone, she told defendant why she was calling. She talked about the notes and about the fact that the time was drawing near for payment of interest on the notes. She inquired if defendant had any ideas in regard to taking care of payments on the notes and mentioned that the interest was about due and that she, the plaintiff, would like to have some action. Defendant would answer that she would talk with Iris, and if he did not immediately come to the phone, he would come to plaintiff's home where he would make a payment. In late November, after Iris' death on November 6, 1956, the conversation between the parties at the Pendleton home occurred and the conversation between them in the spring of 1958 at the old courthouse also occurred, which strengthens plaintiff's evidence given by her in her earlier testimony regarding the telephone conversations.

Defendant protected her demurrer to plaintiff's evidence by moving for a directed verdict after she introduced her evidence. Defendant's evidence did not make up for any deficiencies there may have been in plaintiff's evidence. The trial court overruled the motion and instructed the jury. The jury answered special questions as follows:

"1. Did Iris Pendleton make a one dollar payment on December 27, 1952, on the note marked Exhibit 3? A. Yes.

"2. If your answer to Question No. 1 was yes, then state if the defendant, NELLE PENDLETON, knew and consented to, authorized or ratified such payment. A. Yes.

"3. If your answer to Question No. 2 was yes, then state in what manner you find that the defendant, NELLE PENDLETON, knew and consented to, authorized or ratified such payment. Make your answer specific. A. By signing the note and acknowledging telephone calls which establish that a payment was necessary to be made to forestall legal action.

"4. Did IRIS PENDLETON make a five dollar payment on December 3, 1955, on the note marked Exhibit 4? A. Yes.

"5. If your answer to Question 4 was yes, then state if the defendant, NELLE PENDLETON, knew and consented to, authorized or ratified such payment. A. Yes.

"6. If your answer to Question No. 5 was yes, then state in what manner you find that the defendant, NELLE PENDLETON, knew and consented to, authorized or ratified such payment. Make your answer specific. A. By signing the note and acknowledging telephone calls which establish that a payment was necessary to be made to forestall legal action.

"7. Did IRIS PENDLETON make the other payments of principal and/or interest on the two promissory notes designated Plaintiff's Exhibits 3 and 4, as alleged by plaintiff? A. Yes.

"8. Did the plaintiff at any time state to the defendant that she had received payments on said notes from defendant's husband? A. No."

Since defendant's evidence did not aid plaintiff, if there was any evidence to support the jury's special findings, which were consistent with the general verdict for plaintiff on both causes of action, and upon which the trial court entered its judgment for $1,953.00 with 5% interest on the first cause and $1,443.66 with 4% interest on the second cause, this court will not disturb the judgment on appeal. (*Killough v. Swift & Co. Fertilizer Works*, 154 Kan. 113, 114 P. 2d 831; 2 West's Kansas Digest, Appeal and Error, §§ 994 [2, 3], 1001, 1002, and 1003; 1 Hatcher's Kansas Digest, rev. ed., Appeal and Error, §§ 495, 496.)

Plaintiff cites *Gorrill v. Goff*, 148 Kan. 765, 84 P. 2d 953, 124 A. L. R. 223, where the court in interpreting payment under G. S. 1949, 60-312 made this very clear statement:

". . . the particular form of acknowledgment, known as payment, is not required to be in writing. The reason is obvious. Payment is an executed acknowledgment and speaks for itself. It requires no writing to establish it." (p. 770.)

Plaintiff also cites *Ellis v. Snyder*, 83 Kan. 638, 112 Pac. 594, where it was stated:

"A husband and wife executed a note secured by mortgage on their land, and the husband thereafter died, having previously conveyed the title to his wife. The widow rented the farm to her son-in-law, and during such tenancy the widow died. The son-in-law, with his wife, continued in possession of the farm, and before expiration of five years from the maturity of the note made a small payment on the debt. They continued in possession for a number of years, until this action to foreclose the mortgage was brought, with the acquiescence of the brothers and sisters of the wife; and her husband, with her consent, made several payments upon the indebtedness and paid the taxes on the land, all of which payments were made from the proceeds of crops raised upon the land. No interval of five years elapsed between such payments. He neither paid nor contracted to pay any rent to any of the heirs. *Held,* that such payments prevented the running of the statute of limitation in favor of any of the heirs against the mortgage debt." (Syl. ¶ 1.)

At page 640 of the above opinion, we find it was, in substance,

stated that although Elizabeth (daughter of mortgagors) had objected to her husband's plan to buy out her brothers and sisters and to pay off the mortgage given by her father and mother, she nevertheless cosigned chattel mortgages on growing crops to carry out the plan and knew generally of the payments her husband made so that from the general findings of the judgment against Elizabeth, it had to be assumed that she had acquiesced in his plan. Although the evidence was said to be conflicting, it was held to be sufficient to support such a finding with the result that the payments in effect were made in Elizabeth's behalf as well as that of her husband and were in fact her payments as well as his. (See, also, in connection herewith *Hayes v. Reid,* 145 Kan. 51, 64 P. 2d 19.)

Briefly stated, the pertinent events in our case are that Nelle signed the notes in question as comaker with Iris; she had telephone conversations with plaintiff from time to time prior to Iris' death and personal conversations occurred between plaintiff and defendant in 1956 and 1958 wherein the notes, interest, etc., were mentioned; as a result of the telephone conversations Iris would appear at plaintiff's home, make the payments and plaintiff would credit them on the reverse sides of the notes; Nelle thereby had knowledge generally of the payments having been made. From the special findings of the jury it must, therefore, be assumed that the jury found she acquiesced in or orally ratified those payments.

The conclusion is that the evidence was sufficient to support the jury's findings, the verdict, and the judgment thereon by the trial court. Other questions and contentions of defendant need not be separately decided since they have already been answered by statements made herein.

Judgment affirmed.

Robb J. (concurring in part and dissenting in part): I concur fully with the first conclusion contained in the majority opinion that plaintiff was competent to testify in regard to payments made on the note by Iris Pendleton, but I do not agree with the second conclusion that there was competent evidence to establish the kind of ratification of the payments in controversy that would toll the statute of limitations as to Nelle Pendleton.

In the recent case of *Kindsvater v. Hineman,* 181 Kan. 990, 317 P. 2d 852, the payee sued the comaker wife on a note that was barred by the statute. In response to plaintiff's letter demanding

payment of the note, the comaker wife informed plaintiff by telephone that he should go to California and pick up some personal property there held by her former husband and comaker of the note, which also included some of her property; that he should get what he could out of it, apply the proceeds on the note, and she would finish paying off the note when she got the "rest of it." It was held that the statute of limitations began to run again from the date the amount of the proceeds realized from the sale was credited upon the note and in a unanimous opinion of this court the rule was stated thus:

"In *Gorrill v. Goff*, 148 Kan. 765, 84 P. 2d 953, we stated that a payment, like any other act, may be ratified and may be approved by express oral ratification; when, however, a credit endorsement on a note not originally authorized to be made by the maker is nevertheless ratified by the maker, it becomes as binding on him as though he had made the original payment under circumstances amounting to an acknowledgment of the debt." (pp. 992, 993.)

This court in *Fisher v. Pendleton*, 184 Kan. 322, 326, 336 P. 2d 472, 74 A. L. R. 2d 1274, cited with approval the earlier case of *Good v. Ehrlich*, 67 Kan. 94, 72 Pac. 545, in which the following appropriate statement appears:

"In Wood on Limitations, third edition, section 97, the rule is stated in the following language:

" 'In order to make a money payment a part payment within the statute, it must be shown to be a payment of a portion of an admitted debt, and paid to and accepted by the creditor as such, accompanied by circumstances amounting to an *absolute and unqualified acknowledgment of more being due*, from which a promise may be inferred to pay the remainder. In order to have that effect, · it must . . . appear . . . that the payment was made under such circumstances as warrant a jury in finding an implied promise to pay the balance; and if the payment was made under such circumstances as to rebut any such promise, it does not affect the operation of the statute.' " (My emphasis.)

See, also, *Shanks v. Louthan*, 79 Kan. 363, 99 Pac. 613; *Pessemier v. Zeller*, 144 Kan. 726, 729, 730, 62 P. 2d 882, 107 A. L. R. 1523, 1527.

I believe that plaintiff's evidence, when given every inference contemplated under the law and considered under the most liberal rules of construction, remains devoid of an affirmative showing that Nelle Pendleton ever ratified the payments in question, which were made by Iris. If such testimony as this will establish liability on the part of principals in the law of agency, or liability on the part of all comakers on negotiable instruments, where one comaker alone

makes a payment or payments, as happened here, I am of the opinion the law of agency, as well as that of bills and notes has been greatly relaxed.

The jury might be able to infer that Nelle, from a general knowledge of business procedures, should have known when she signed the notes as comaker that the notes would have to be paid within the time prescribed therein but from thereon nothing approaching ratification can be inferred from the testimony as to what actually occurred in the telephone conversations, and in Iris leaving their home. The members of the jury obviously speculated as to the facts and used their imaginations to make the findings they did on the evidence deduced and just how far they did speculate is apparent from the latter part of answers to special questions No. 3 and No. 6 where it was stated:

". . . which would establish that a payment was necessary to be made to forestall legal action."

I believe as a matter of law that under the Kindsvater case plaintiff totally failed to produce any evidence of an express oral promise which would state a cause of action against Nelle, and that the trial court erred in overruling her demurrer to plaintiff's evidence.

I would reverse the judgment and remand the cause with instructions to sustain defendant's demurrer to plaintiff's evidence.

I am authorized to say that Mr. Justice Wertz joins in the foregoing dissenting opinion.

Fatzer, J., dissenting in part and concurring in part: I dissent from the syllabus and corresponding portion of the opinion affirming the judgment on the $1,000 promissory note executed by the defendant and her husband, as comakers, on September 30, 1936, being of the opinion that the note was barred by the statute of limitations, and would have required the defendant's written acknowledgment of an existing liability to pay the same (G. S. 1949, 60-312; *Updegrove v. Cooper*, 147 Kan. 752, 78 P. 2d 843.) In other respects I concur in the majority opinion affirming the judgment.