334 F.2d 422
 William C. ANDREWS and Julie T. Andrews, by William C. Andrews, Her Father and Next Friend, Appellants,
v.
OLIN MATHIESON CHEMICAL CORPORATION, a Virginia Corporation, doing business as E. R. Squibb and Sons, Inc., New York Division of Olin Mathieson Chemical Corporation, Appellee.
 No. 17439.
 United States Court of Appeals Eighth Circuit.
 July 23, 1964.
 
 Elliott R. McDonald, of McDonald, McDonald & Carlin, Davenport, Iowa, made argument for the appellant and filed brief.
 Larned A. Waterman, of Lane & Waterman, Davenport, Iowa, made argument for the appellee and filed brief with Otto C. Bauch and Lane & Waterman, Davenport, Iowa.
 Before VAN OOSTERHOUT, RIDGE and MEHAFFY, Circuit Judges.
 RIDGE, Circuit Judge.
 
 
 1
 This is an appeal from a judgment dismissing (after trial and jury verdict in favor of appellee) all counts of appellants' complaint seeking damages for deafness alleged to have been caused to the infant appellant, Julie T. Andrews, because of injections of certain drugs.[1]
 
 
 2
 No claim is here made by appellants that they are entitled to judgment notwithstanding the verdict of the jury. All assignments of error relate to procedural matters occurring in the course of pre-trial procedure, or at the trial on the merits. Tersely stated, errors so claimed are: (1) unjustifiable preclusion of the testimony of two doctors proffered as witnesses by appellants; (2) the trial court's refusal to permit appellants to read to the jury cross-examination of two witnesses contained in depositions, after waiver of reading parts thereof by appellee; (3) the giving of instructions to the jury; (4) alleged misconduct of one juror for failure to make disclosures on voir dire examination; and, (5) exclusion of ex post facto evidence as to "cause" proffered by appellants. In the light of the errors so claimed, and it appearing that diversity jurisdiction here exists, we only set forth in the course of this opinion such facts as will give proper focus to the error asserted.
 
 
 3
 On June 25, 1959, when Julie Andrews was seven and one-half months of age, she became ill and was taken to St. Joseph's Mercy Hospital in Clinton, Iowa, for treatment of pneumonia, bilateral otitis media, and tonsillitis. Her then attending pediatrician prescribed, over a three-day period, one intramuscular injection of a drug, dicrysticin fortis, and two injections of dicrysticin, manufactured and sold by appellee. Julie was released from the hospital on June 30, 1959. One month later, Julie's mother noticed that her daughter apparently could not hear. As a consequence she took Julie to the office of her pediatrician. The doctor made an examination of Julie and found the child did not respond to loud noises. Arrangements were then made for the child to be examined by an otolaryngologist who reported Julie had complete and permanent loss of hearing. There was evidence adduced at the trial which related Julie's loss of hearing to the injections of the appellee's drugs, ante; i. e., proof was made as to the inherent composition, ingredients, and toxicity of dicrysticin and dicrysticin fortis, such as to warrant a submission of appellee's liability to the jury for determination. Appellee denied the toxicity of its drugs as claimed by appellants and made proof that Julie's deafness was congenital, and if not so, then it was the result of other causes for which it was not responsible. As above noted, the jury found "all the (factual) issues" submitted to it under the instructions as given by the trial court "in favor of the defendant," appellee.
 
 I.
 
 4
 Appellants' first assignment of error relating to the preclusion of witnesses arose thus: District Judge McManus presided over the pre-trial procedure conducted in the case at bar. Seemingly by pre-trial order, counsel for these parties were directed, among other things, to disclose the names of all their witnesses, as well as the general content of their proposed testimony; and:
 
 
 5
 "If the name and address of the witness is not submitted at the time of the final pre-trial conference, the witness shall not be permitted to testify, but this restriction shall not apply to rebuttal witnesses, the necessity of whose testimony cannot reasonably be anticipated prior to trial." (Applnts. Br., pp. 5, 6.)
 
 
 6
 Compliance with such pre-trial directive was apparently made by way of a joint written report filed by counsel with the trial court. This is apparently so, since it is only on briefs that reference is made to such matters, and there only in general terms. The record proper is silent as to the pre-trial process pursued in the case at bar. All that appears in the printed record is a final pre-trial order, covering seventeen (17) pages.[2] Nowhere, i. e. by briefs or record proper, does it appear that appellants at any time objected to any pre-trial proceedings. The final pretrial order was entered of record on February 14, 1963, which directed a trial on the merits to commence March 26, 1963.
 
 
 7
 However, it appears that on March 21, 1963, — five days before the date so set for trial — appellants' counsel made application to Judge McManus to call four (4) persons as witnesses (a hospital record librarian, and three nurses) not previously disclosed at pre-trial conference. Without objection of appellee, those witnesses testified at the trial on the merits.
 
 
 8
 On the date set for commencement of trial, counsel for appellants, in chambers before District Judge Hanson (duly designated as Judge to preside at the trial on the merits), sought permission to call as witnesses two doctors whose names had not previously been disclosed.[3] An objection by appellee to the calling of such witnesses was sustained. It is upon that ruling made on the first day of trial, that appellants premise error as to the "preclusion of witnesses."
 
 
 9
 As that matter is presented, we are asked to judicially notice plain error appearing on the face of this record. Appellants' singular premise therefor is "that the preclusion" order "was unjust," in that it puts "technical rules and procedures into Federal practice that the Federal Rules of Civil Procedure were designed to eliminate." We shall not follow these parties in the presentations they make regarding that subject — primarily, because we cannot find in the record before us any matter establishing pre-trial procedure as followed in the District Court for the Southern District of Iowa, by rule or otherwise; nor any objection made by appellants to any action taken or ruling made as to the pretrial procedure followed in the case at bar. All that appears from the record is that Judge Hanson, on the first day of trial, ruled in chambers that appellants' counsel would not be permitted to call either of the doctors as witnesses in chief, whose identity, was then first disclosed. Appellants' counsel acquiesced, in part, to the ruling so made as to one such doctor, namely, Dr. Albert Zimmer.
 
 
 10
 As to the other doctor precluded (Dr. Robert E. Dwyer) the only formal offer of proof made was "(t)hat we be allowed to call Dr. Dwyer and that he be allowed to testify from the investigations that he's made as to the cause of this child's deafness." The singular ruling then made by Judge Hanson was, "Well, the offer of proof as indicated is now denied."[4] Rule 43(c), F.R.Civ.P., 28 U.S.C.A., specifically provides how "excluded evidence" is to be preserved for judicial review. That appellants were afforded ample opportunity to make any offer of proof as to what testimony these precluded doctors would give if called as witnesses, is made manifest. It is only "in extraordinary situations" that a party may call "upon (us) to act in the interest of judicial administration itself" where matters occurring before a trial court do not appear in the record on appeal. Cf. Hawkins v. Missouri Pacific R. Co., 188 F.2d 348 (8 Cir. 1951). The case law is legion that a question not going to the jurisdiction of the court cannot be raised for the first time on appeal. Cf. Goldie v. Cox, 130 F.2d 695 (8 Cir. 1942); Arkansas Valley Feed Mills, Inc. v. Fox deLuxe Foods, Inc., 273 F.2d 804 (8 Cir. 1960); Charter Oak Fire Ins. Co. v. Mann, 304 F.2d 166 (8 Cir. 1962).
 
 
 11
 The only "extraordinary situation" we perceive in the case at bar as to the "preclusion of witnesses" is that counsel for appellants were "laboring under the misapprehension" that "Dr. Robert E. Dwyer, the obstetrician who had brought the plaintiff, Julie Andrews, into the world, and who had treated her as a pediatrician for a couple of months following her birth" had moved from the community in which he formerly resided. Counsel apparently continued under that misapprehension from the time the complaint in the case at bar was filed until two or three days before the commencement of the trial on its merits. During that period of time (approximately two years) counsel admittedly "just assumed" that Dr. Dwyer had moved away. They made no effort to determine his whereabouts. The Doctor, during all such time, was a resident of the same community where he resided when he attended the delivery of Julie. If it is thought that such laxity on the part of appellants' counsel should not be held against appellants' right of action here asserted, then there are other facts appearing in the record which we think must be considered before any equation as to error in the "preclusion of witnesses" might be judicially noticed.
 
 
 12
 The record reveals that a pre-trial stipulation of the parties was made that Julie was "healthy and normal at birth, except for her alleged loss of hearing." Julie's mother, father, and aunt each testified to facts which, if believed, established Julie was able to hear prior to June 25, 1959. Medical testimony adduced at the trial, hypothetically and otherwise, revealed that Julie's state of hearing as being normal at birth was taken into consideration by four other doctors who testified on behalf of appellants; and that such matter was an issue of fact well aired at the trial. From statements made by counsel at the pretrial conference held on the first day of trial, it appears that if Dr. Dwyer had testified as a witness he would have given medical testimony of like tenor. Under the circumstances, we cannot find reversible error as a matter of law, as appellants would have us do, respecting the preclusion of Dr. Dwyer as a witness in chief.
 
 
 13
 Although Dr. Zimmer had been precluded as a witness in chief for appellants, they thereafter sought to call him as a rebuttal witness. Appellee objected to Dr. Zimmer's testifying as a rebuttal witness. It is appellants' assertion that Dr. Zimmer was not required to be listed as a medical witness because the pre-trial order provided such "restrictions shall not apply to rebuttal witnesses, the necessity of whose testimony cannot reasonably be anticipated prior to trial." Judge Hanson, out of hearing of the jury, requested appellants to make an offer of proof as to the testimony he would give in rebuttal.
 
 
 14
 The following colloquy appears in the record:
 
 
 15
 "Mr. McDonald: We want to make an offer of proof. The plaintiff proposes to call Dr. Albert Zimmer in rebuttal to negate the opinion testimony given by the defendant particularly that testimony dealing with idiosyncrasy or allergy.
 
 
 16
 "The Court: Now, I understand that negation is both for your own witnesses, whatever they might have testified to, and for the testimony of the defendant's witnesses.
 
 
 17
 "Mr. McDonald: None of my witnesses testified as to allergy, I don't believe.
 
 
 18
 "The Court: Well, as to other matters of cause, you're indicating cause?
 
 
 19
 "Mr. McDonald: Yes, and I further offer that Dr. Zimmer will testify, if permitted to do so, that in his opinion neither congenital deafness or deafness caused by disease is a probable cause in this case. He will admit they are possible causes but not a probable cause, and further, Dr. Zimmer will testify, if permitted to do so, that in his opinion the probable cause of Julie Andrews' deafness is the ototoxicity of dihydrostreptomycin. Furthermore, Dr. Zimmer is an otolaryngologist practicing medicine in Moline, Illinois. That he did examine Julie Andrews before the time that she was ever represented by a lawyer and that he is the man responsible for her taking her speech therapy at Augustana College at this time. I further would like to say that Dr. Zimmer was not available because he was out of town during our case in chief."
 
 
 20
 When counsel for appellants proffered Dr. Zimmer as a witness in chief, they told the Court "they did not know at the time" pre-trial procedure was conducted in the case at bar that Dr. Zimmer "had any evidence of importance to their cause." The record does not reveal when they first gleaned knowledge of what testimony Dr. Zimmer would give.
 
 
 21
 An inference to be made from the record is that what counsel for appellants indicated, out of the presence of the jury, the testimony of Dr. Zimmer would be, if they were permitted to call him as a rebuttal witness, was "further opinion testimony" as to the cause of the infant appellant's deafness; and that such proffered testimony was to be related "to matter of probability and possibility" of "cause in this matter." As to the offer of proof so made, Judge Hanson ruled:
 
 
 22
 "* * * it does not indicate that it comes within the terms of true rebuttal. It is an indication that it is supplementary to and (would) be a portion of the main case in this cause. * * * Ample and sufficient opportunity (was) extended to the plaintiff (appellant) in this cause to have offered this type of testimony heretofore. It would appear further that this type of testimony (would) be that kind of testimony which would not necessarily impeach or contradict, but what is indicated in the sphere of other opinion (testimony)." (Par. added.)
 
 
 23
 On the record, we cannot reach a conclusion, contra. Therefore, we do not perceive abuse of judicial discretion as a matter of law, as appellants would have us judicially notice, because of the preclusion of Dr. Zimmer as a rebuttal witness.
 
 II.
 
 24
 Appellants' second contention as to the use of depositions appears thus: In the course of trial appellants introduced and read to the jury the direct testimony of two medical witnesses contained in deposition given by them. After so doing, appellee waived reading the cross-examination of one such witness. Appellants' objection to such waiver was overruled as to the deposition testimony of Dr. Liarle. On brief, appellants' counsel assert: "The plaintiffs then agreed to adopt the cross-examination as their own testimony. In the absence of any authority to support their position, the plaintiffs (appellants) were not allowed to adopt the cross-examinations as their testimony." As to the deposition of Dr. MacQueen, — after counsel for appellants read the whole of that doctor's direct testimony, appellee only read certain portions of the cross-examination, taken out of context, to establish that he never personally attended a case of deafness caused by administering the drugs here considered, or that he ever knew about deafness arising from short-term use of such drug; and "when asked if he had any personal opinion as to the cause of Julie's deafness" he answered in his deposition, "I did not commit myself in the record." "Q. And you are not prepared to commit yourself now? A. No." Appellants assert:
 
 
 25
 "The plaintiffs then moved the court to read the entire deposition of the doctor. The court then sustained an objection to the reading of any part of this deposition unless it was relevant to the part introduced by the defendant."
 
 
 26
 It is the above ruling which is a part of the assignment of error, ante. On brief, appellants state:
 
 
 27
 "Many of the objections made by the defendants to the plaintiffs reading certain portions of (these) deposition(s) were made at the bench, out of hearing of the jury and the court reporter, and consequently no record was made of them." (Par. added.)
 
 
 28
 Regardless of the flexibility of the Rules of Civil Procedure and how loose some schools of thought may be as to how those rules should be applied, one thing is certain * * * error cannot be claimed as to trial court procedure, nor rulings made as to the admission of evidence, absent some showing of the character and circumstances under which such a ruling has been made. It is a well-established axiom, universally recognized, that the scope of review only deals with cases upon the basis of facts disclosed by the record, not with non-existent or assumed circumstances. Fort Worth and Denver R. Co. v. Harris, 230 F.2d 680 (5 Cir. 1956).
 
 
 29
 Neither on the face of this record nor on briefs are we informed as to the specific testimony, or the evidentiary proof appellants desired to proffer by reading all the cross-examination of either Dr. Liarle or Dr. MacQueen, that was excluded by the rulings of which they here make complaints. Prejudicial error is not presumed to exist. Danaher v. United States, 184 F.2d 673 (8 Cir. 1950). It is the burden of an appellant to establish that matter as an existing fact on appeal. Plain error of course we will consider, though not assigned by a party. Adams Dairy Co. v. St. Louis Dairy Co., 260 F.2d 46 (8 Cir. 1958). The underlying purpose therefor is to prevent a miscarriage of justice. Agee v. Lofton, 287 F.2d 709 (8 Cir. 1961). However, the practice of noticing such error will not be extended by us beyond the purpose for such rule.
 
 
 30
 Here, the District Court restricted appellants' reading of deposition to such portions of the cross-examination waived by appellees as were relevant to the cross-examination which had been introduced. Rule 26(d) (4) F.R.Civ.P., 28 U.S.C.A., could hardly be clearer:
 
 
 31
 "If only part of a deposition is offered in evidence by a party, an adverse party may require him to introduce all of it which is relevant to the part introduced * * *." (Emp. added.)
 
 
 32
 We can find no error as to abuse of use of depositions as claimed by appellants.
 
 III.
 
 33
 Appellants next complain of two instructions given to the jury: * * * one defining negligence as "ordinary care", and the other covering "intervening agency."
 
 
 34
 Prior to the giving of his instructions to the jury, Judge Hanson struck from appellants' complaint all specifications of negligence except one relating to failure to warn. Appellants' remaining legal theories based on breach of warranties, expressed and implied, were duly submitted to the jury. The instructions covering the issues of "toxicity and safety" of the drugs in question were responsive to the agreed statement of facts as made at pre-trial conference and proof adduced at the trial. The instruction covering "failure to warn" as to the side effects of the drugs * * * the only issue of negligence submitted * * * told the jury that if it found and believed that appellee failed to warn the public or physicians of the severity of the side effects of its drugs "of which it did know, or should have known by the use of reasonable diligence, prior to the administration of this drug to" Julie, would constitute negligence.
 
 
 35
 The instruction on "intervening cause" was apparently given as a result of testimony adduced from Julie's pediatrician, called as a witness by appellants. From her testimony, an inference might be made that she may have administered too large a dose of the drugs to the infant child. Appellee did not seek to avoid liability in this case on the theory of intervening cause. Aside from denial of appellants' theories of liability, appellee affirmatively alleged "congenital" deafness, and if not that * * * and her deafness "be attributable to the proper administration" of its product * * * "then her condition was caused by a personal idiosyncrasy, sensitivity or allergy" for which it was not liable. No contention is here made as to the proper submission of matters to the jury except as above stated.
 
 
 36
 Appellants having made no objection to giving of any instructions before the jury retired, as required by Rule 51, F.R.Civ.P., 28 U.S.C.A., they are in no position to have us review the error they now claim. Errors as to the giving of instructions not brought to the attention of the trial court will not be considered on appeal. A trial court is entitled to an opportunity to pass upon objections lodged to its instructions, so that it may correct any possible error therein, and must be shown as having failed so to do, before we are called upon to review error so claimed. Siegfried v. The Kansas City Star, 298 F.2d 1 (8 Cir. 1962); Honebein v. McDonald, 299 F.2d 493 (8 Cir. 1962); Carver v. Tanner, 252 F.2d 26, 31 (8 Cir. 1958.)
 
 IV.
 
 37
 Appellants claim prejudice at the trial, because of misconduct on the part of a juror for concealing and failing to disclose his true occupation. They ask us to take judicial notice of that matter, presumably because the record is silent as to any facts in support of such contention, except reference made thereto in appellants' motion for new trial. So far as we can ascertain, the factual matters there stated were not submitted to, nor adjudicated by, the District Court. On brief, appellants state "affidavits to the motion for new trial" disclose the facts of which they here complain. The printed record reveals no such affidavits. All that appears is that during voir dire examination Juror Webster responded as follows:
 
 
 38
 "And Mr. Webster, my record indicates you are an accountant. Are you in business for yourself?
 
 
 39
 "Mr. Webster: I'm with the Nagel Lumber Company in Iowa City.
 
 
 40
 "Mr. McDonald (appellants' counsel): Nagel Lumber Company in Iowa City."
 
 
 41
 Such is the extent of that juror's voir dire examination.
 
 
 42
 In their unverified motion for new trial, appellants state that the occupation of Gordon S. Webster, of Iowa City, listed as an accountant in the list of jurors furnished to them by the District Court, was in truth and fact that of "an insurance agent and a director of an insurance company and has been such for many years past." They ask us to "take judicial notice of the fact that insurance agents, representatives, or adjusters, and in particular members of the board of directors of an insurance company, are almost unanimously denied the right to sit on a jury in a personal injury action" and Juror Webster's failure to disclose "his full occupation in response to questions directly directed to him," is manifest error. No affidavits appear in the record of this case to sustain the factual matter appellants would have us so notice.
 
 
 43
 The only answer to be made to the above assignment of error is that there is nothing in this record revealing false, misleading, or any concealed matter by Juror Webster as to any question propounded to him on voir dire examination. The only query that was propounded to that juror does not warrant the conclusions appellants reach. The record does not reveal that appellants made any offer to prove, by affidavit or witness, what they now say was the true occupation of Juror Webster. Any irregularity in the qualification of a juror after return of a verdict, absent specific showing of injury or prejudice, will not be considered for the first time on appeal. International Boxing Club of N. Y., Inc. v. United States, 358 U.S. 242, 79 S.Ct. 245, 3 L.Ed.2d 270, Morgan v. Sun Oil Co., 109 F.2d 178 (5 Cir. 1940) cert. den. 310 U.S. 640, 60 S.Ct. 1086, 84 L.Ed. 1408.
 
 V.
 
 44
 The final contention made by appellants is the District Court erred in excluding evidence offered by them, that "drugs containing a combination of streptomycin and dihydrostreptomycin were taken off the market by the Commissioner of the U.S. Pure Food, Drug and Cosmetic Act in January 1960, some six months after (the infant) plaintiff was injected with such drugs." It is most difficult for us to follow the argument appellants make in respect to the above issue. On brief, they assert:
 
 
 45
 "The court admonished counsel for plaintiffs not to mention (that) fact in the opening statement, * * * that he would not permit any interrogatories to any of the witnesses (relating) to (that) fact. * * * Just how the court knew in the first place that this was one of the factors in the case is unknown to the plaintiff. Nothing was said in the pleadings, or in the pretrial conferences that the Administrator of the Pure Food, Drug and Cosmetic Act had ruled this drug so toxic that it was removed from the market. Nevertheless the court anticipated that this matter would come up and ruled upon it before it was ever mentioned by the plaintiffs."
 
 
 46
 The error which appellants assert flows from the pretrial rulings made by Judge Hanson, ante, is stated by them as follows: They were not "allowed to ask the drug nurse of St. Joseph's Mercy Hospital if she still dispensed this particular medication"; that they were not allowed to ask Dr. Rockwell, the attending physician, "what her thinking about the drug was at this time"; and that they "were not even allowed to ask, on cross-examination of Dr. Hobson, a direct employee of the (appellee), if there had not been a serious dispute in relation to these drugs before the Administrator of the Pure Food, Drug and Cosmetic Act before the injection of this drug into the (infant) plaintiff." Further, appellants state they "were not allowed to impeach the credibility" of five doctors called as expert witnesses by appellee, "by showing this drug was so toxic that it had been taken off the market by the Administrator" ante.
 
 On brief, appellant states:
 
 47
 "It might be contended by the (appellee) that at no place in this record is there a duplication of the ruling of the United States Commissioner of the Pure Food, Drug and Cosmetic Act. That is simply because the court never let us put it in. In this respect, however, we wish to point out that the Federal District Court is required to take judicial notice of any Federal laws necessarily brought into operation by the allegations of the complaint, although specific reference to the law has been omitted. (Citing cases.)
 
 
 48
 "Not only must the court take judicial notice of the Federal statutes involved, but likewise must take judicial notice of the Administrative rules and regulations of the Federal, State, Executive Departments, and of well known administrative bodies."
 
 
 49
 Further on, appellants make clear that their contention here is:
 
 
 50
 "that the evidence relating to the removal of Dicrysticin and Dicrysticin Fortis from the market after its administration to the plaintiff by the Administrator of the Pure Food, Drug and Cosmetic Act was admissible (as evidence) in chief and should have been judicially (noticed by the District Court). It (was) also admissible (they contend) under Rule 44 as proof of an official document. It was relevant to the subject matter. In the alternative it was admissible on cross-examination for the purpose of impeaching and testing the credibility of the defendant's doctors, and that it was admissible in rebuttal, and that the restriction imposed by the court upon the plaintiffs in this case constituted a denial of substantial rights and is error."
 
 
 51
 We have reviewed all that appears in this record relating to rulings made by Judge Hanson respecting this matter. As appellee aptly points out, it cannot be ascertained therefrom where anything was ever "said in the pleadings or in pretrial conferences that the Administrator of the Pure Food, Drug and Cosmetic Act" had ever ruled that the drug here considered was "toxic" or that it was "removed from the market." It does not appear before us that any proof was ever proffered which would sustain or warrant appellate review of the above subject matter, notwithstanding the contention made by appellants, ante.
 
 
 52
 What appears to have happened at the trial is that appellants proposed to announce to the jury in their opening statements and bring to its attention that sometime in 1960, after the infant appellant received the injection of the drug ante, the Administrator of the Pure Food and Drug Administration had ordered dicrysticin and dicrysticin fortis withdrawn from the market because of their toxicity. That matter was a subject of considerable discussion at pre-trial conference held by Judge Hanson on the first day of trial. At that conference, he told counsel that from his reading of the file it appeared that evidence of action taken by the Administrator might not be admissible at the trial of this case; but the only ruling then made by him related to opening statements, namely: "You are now to be foreclosed from touching upon that portion of the evidence in your opening statements. * * *"
 
 
 53
 Nowhere does it appear that appellants' counsel thereafter proffered any evidence as to any directive, ruling or order, made by the Administrator of the Pure Food, Drug and Cosmetic Act relating to any control of marketing activity as to the above-mentioned drugs, as appellants now assert.
 
 
 54
 Simply stated, there is nothing in this record from which we can ascertain whether there is any merit to the contention appellants now make as to any orders or rulings of the Administrator of the Pure Food, Drug and Cosmetic Act. From our reading of the record, we are totally lost in the labyrinthine argument appellants proffer in respect to this assignment of error.
 
 
 55
 In the course of this opinion, we have undertaken the task of following appellants in each of their assignments of error. We have culled the record on appeal, to ascertain any probable basis for the assignments of error they make as to sanctions imposed at pre-trial conference * * * notwithstanding the fact that no record citations appear in appellants' brief as required by our Rule 11 (b), Third, disclosing the matters, evidence, objections, or rulings of which they here complain. We have done so because of the duty that is ours,[5] and the serious nature of the claim appellants assert against appellee. This, notwithstanding the record on appeal and appellants' brief have been prepared in utter disregard of the Rules of this Court. Our Rule 11(b), Fifth, reads:
 
 
 56
 "* * * (This) court will disregard any statement in the argument (in printed briefs) as to what the record contains unless reference is made to the page of the printed record where the statement may be found or verified."
 
 
 57
 We have not, in times past, hesitated to decline to receive briefs which do not comport with our rules. Cf. Cyc. Fed. Proc., Vol. 14, § 66.09, and cases there cited.
 
 
 58
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 The complaint in eight counts alleged claims for damages, separately stated, for negligence or breach of warranty, expressed and implied. The first four counts sought damages on behalf of the infant, Julie T. Andrews. The remaining four counts alleged claims on behalf of the father, William C. Andrews, for loss of services, medical expense, cost of exceptional maintenance, etc
 Counts 2 and 6, premised on the doctrine of res ipsa loquitur, were dismissed by the Court during the course of trial. No error is here claimed as to that ruling.
 
 
 [2]
 The final pre-trial order contained a statement of agreed facts; the names of "all witnesses who (would) testify" at the trial; the factual contentions of the parties; the "triable issues"; directions given by the Court as to "setlement negotiations"; filing of trial briefs; time for taking of depositions; and a specified trial date on the merits
 
 
 [3]
 Four of the six doctors named by appellants in the pre-trial order testified at the trial on the merits. The infant appellant's pediatrician who made the injections of the drugs here considered was not listed by appellants but by appellee. However, she was called as a witness for appellants
 
 
 [4]
 The record discloses there was a general discussion in chambers before such offer of proof was made as to why Dr. Zimmer and Dr. Dwyer were not listed as witnesses pursuant to the pre-trial procedure followed, but the above is the only offer of proof made respecting the import of Dr. Dwyer's proffered testimony
 
 
 [5]
 See, Seminar on Procedures for Effective Judicial Administration: "AN APPELLATE JUDGE'S APPROACH WHEN REVIEWING DISTRICT COURT SANCTIONS IMPOSED FOR THE PURPOSE OF INSURING COMPLIANCE WITH PRETRIAL ORDERS." 29 F.R.D. 191, 420-426