**STERLING DRUG, INC., a Corporation, Appellant,**

**v.**

**Maxine F. CORNISH, Appellee.**

**No. 18310.**

United States Court of Appeals Eighth Circuit.

Nov. 30, 1966.

Rehearing Denied Jan. 5, 1967.

ton R. Smalley, Kansas City, Mo., were with him on the brief.

James W. Benjamin, Rogers, Field & Gentry, Kansas City, Mo., for appellee. Glendon M. Fisher Jr., Nashville, Tenn., was with him on the brief.

Before VOGEL, Chief Judge, MEHAFFY, Circuit Judge, and McMANUS, District Judge.

McMANUS, District Judge.

This is an appeal in a diversity case from an $80,000.00 remitted judgment on a $110,000.00 jury award to a fifty year old Kansas citizen for permanent injury to her eyes caused by drug manufacturer's failure to warn her doctors of a prescribed drug's side effect.

Appellant's grounds for appeal are as follows:

I. Refusal of the trial court to direct a verdict for appellant because there was insufficient evidence to support a verdict for the appellee.

II. Alleged errors in the court's instructions to the jury and refusal to give certain of appellant's requested instructions.

III. Refusal of the trial court to direct a verdict for appellant because the action was barred by the applicable statute of limitations, or, in the alternative, to submit to the jury the question of when the cause of action accrued for purposes of the statute of limitations.

We affirm.

I.

Chloroquine phosphate, the drug in question, is manufactured and sold by appellant drug company under the trade name Aralen. There is no question here of any defect in the manufacture of the drug, nor of its beneficial qualities when taken as prescribed. The drug has been used widely and effectively in the treatment of arthritis. Unfortunately, the drug produces a very serious side effect in a small percentage of those to whom it is administered. The side effect is a condition known as chloroquine retinopathy, a degeneration or destruction of certain cells in the retina of eye caused

Douglas Stripp, of Watson, Ess, Marshall & Enggas, Kansas City, Mo., for appellant. James F. Duncan and Clay-

by the chloroquine chemical in the drug. The condition results in blindness in that part of the retina which is destroyed, and is apparently irreversible. Appellee is one of those in whom the side effect occurred. As a result of her taking Aralen daily for approximately four years, from November 1958 to December 1962, she has suffered an extensive and permanent impairment of her vision. It is impossible to predict in advance in which users of the drug the side effect will occur. However, it was appellee's contention that appellant knew or should have known that some people would be so affected, and was negligent in its failure to warn doctors, including appellee's doctors, to be on the lookout for symptoms of the condition.

In reviewing conclusions reached by the jury, we must view the evidence in the light most favorable to the prevailing party, and the verdict must not be set aside unless there was no substantial evidence to support it. Fullerton v. Sauer, 337 F.2d 474 (8th Cir. 1964); City of West Plains, Mo. v. Loomis, 279 F.2d 564 (8th Cir. 1960). We believe there was sufficient evidence in this case to support the jury's verdict. Chloroquine retinopathy is a relatively recent medical discovery. The first article to describe the condition appeared in a British medical journal in October 1959, almost a year after appellee began taking the drug. Thereafter, several other articles were written and published in various medical journals. The early articles were cautious in attributing the condition to chloroquine treatment. As more cases developed and were examined, the connection between the drug and the retinal damage became more definite. Whether appellant was or should have been sufficiently certain of the connection in time to warn appellee's doctors and prevent her injury is a question that was properly left to the jury.

Appellant did in fact make revisions in some of its literature as early as June 1960. Appellant's Aralen "product card," a card containing information about a particular drug, was changed to include the possibility of a side effect causing retinal damage. This revised product card was approved by the FDA in August 1960, and was thereafter distributed to doctors by appellant's "detail men." However, the jury could have found from the testimony that doctors do not regularly refer to these product cards, and quite possibly would not be aware of changes made in them. In January of 1963, too late to help appellee, appellant sent a letter to all doctors specifically calling their attention to the retinal side effects of Aralen. Appellant contends the letter was not sent sooner because the connection between the drug and the condition was not yet sufficiently established, and because some time was consumed in clearing the letter with the FDA. The whole question of the timeliness of appellant's warning was, in our opinion, one upon which reasonable men could differ. The question was therefore properly left to the jury, and there was no error in the trial court's refusal to direct a verdict for appellant.

II.

Appellant raises several objections to the trial court's instructions and refusal to give appellant's requested instructions. In our opinion, only three of these objections merit discussion.

The first deals with the court's instruction concerning appellant's duty to warn appellee's doctors of the side effect. The evidence at trial established that chloroquine retinopathy has been observed only in a very small percentage of those to whom the drug has been administered in the normally prescribed quantity. It appears that a small number of people are specially susceptible to chloroquine. The court instructed the jury that if appellant knew or should have known that a group of persons would suffer rare side effects, appellant had a duty to warn the medical profession of the susceptibility of such a hypersensitive or idiosyncratic group. Appellant insists that the duty to warn does not extend to those few individuals who are injured because

of their own unusual hypersensitivity to a product. Several cases are cited in support of this proposition. E. g., Merrill v. Beaute Vues Corp., 235 F.2d 893 (10th Cir. 1956); Bonowski v. Revlon, Inc., 251 Iowa 141, 100 N.W.2d 5 (1959); Kaempfe v. Lehn & Fink Prods. Corp., 21 A.D.2d 197, 249 N.Y.S.2d 840 (1964). However, appellant's view has not been universally accepted. See Gober v. Revlon, Inc., 317 F.2d 47 (4th Cir. 1963); Wright v. Carter Prods., 244 F.2d 53 (2d Cir. 1957); No applicable Kansas cases have been found. There is one Missouri case in point, and it appears to be contra to appellant's position. See Braun v. Roux Distrib. Co., 312 S.W.2d 758 (Mo.1958). In the *Braun* case, the plaintiff had been awarded damages by a jury for defendant's negligent failure to warn of a possible allergic reaction to a toxic ingredient in hair dye manufactured by defendant. Testimony tended to show that, at most, three to four percent of the users of the product had suffered an allergic reaction. In affirming the verdict, the Supreme Court of Missouri indicated that defendant had a duty to warn if it had knowledge of a group who could suffer injury, even though the group was admittedly small. Id. at 764–765.

■■ Under the facts of this case, we believe the better view is that appellant did have a duty to warn. The instant case is readily distinguishable from those cases denying relief to hypersensitive or idiosyncratic plaintiffs. Those case cited by appellant deal with over the counter retail products. The denial of relief seems to be based on the unforeseeability of the injury and the futility of a warning even if given. It is said to be unreasonable to expect a manufacturer to foresee that some few persons among its many customers will suffer a rare allergic reaction to some ingredient in the product. See Merrill v. Beaute Vues Corp., supra 235 F.2d at 897; Bonowski v. Revlon, Inc., supra 251 Iowa at 147, 100 N.W.2d at 8. In addition, a warning printed on a retail package to the effect that those allergic to a speci-fied ingredient in the product should not use it would be effective only if the purchaser knew in advance of his allergy, a knowledge which most purchasers would not have. See Merrill v. Beaute Vues Corp., supra 235 F.2d at 897; Kaempfe v. Lehn & Fink Prods. Corp., 249 N.Y.S.2d supra at 847. In the instant case there was sufficient evidence for the jury to find that appellant did in fact know, and thus could have foreseen, that some persons would be injured by the drug's side effect. Moreover, in this case we are dealing with a prescription drug rather than a normal consumer item. In such a case the purchaser's doctor is a learned intermediary between the purchaser and the manufacturer. If the doctor is properly warned of the possibility of a side effect in some patients, and is advised of the symptoms normally accompanying the side effect, there is an excellent chance that injury to the patient can be avoided. This is particularly true if the injury takes place slowly, as is the case with the injury in question here. Therefore, the reasons given for denying liability in other cases do not exist here. We believe the court's instruction was an accurate statement of the law.

■ Appellant alleges that appellee's doctors negligently failed to keep up with medical literature, including appellant's literature. It is argued that this negligence was an intervening proximate cause of appellee's injury, and that the trial court erred in failing so to instruct the jury. We find this argument without merit. There is no question of intervening proximate cause in this case. The sole issue was whether appellant negligently failed to make reasonable efforts to warn appellee's doctors. If appellant did so fail, it is liable regardless of anything the doctors may or may not have done. If it did not so fail, then it is not liable for appellee's injury. The issue was to be resolved by the jury, and we see no error in the court's instruction.

■ Appellant urges that the court erred in instructing the jury not to consider certain hearsay testimony to the

effect that appellee took more than the suggested dosage of the drug. The statement was not objected to when made. The court, apparently on its own motion, instructed the jury that the statement could be considered only as impeachment of appellee's doctor's testimony that he prescribed the correct dosage. We find no error in the instruction. The purpose of requiring a party to object is to inform the judge that there is an issue of law, so that the judge may consider whether there has been error and make appropriate corrections. Therefore, if a party makes no objection, he has no grounds for appeal. See Andrews v. Olin Mathieson Chemical Corp., 334 F.2d 422, 429 (8th Cir. 1964); 1 Wigmore, Evidence § 18 (3d ed. 1940). It is not error for a judge to exclude or limit testimony that he knows to be erroneous, even though he has not been notified by a party. Here the hearsay statement was entirely uncorroborated and could have been highly prejudicial. The court properly instructed the jury not to consider it as direct evidence.

## III.

The final issue in this appeal concerns the running of the applicable statute of limitations. Because of the Missouri borrowing statute, the statute of limitations we must consider is that of Kansas. Mo.Rev.Stat. § 516.190 (1959); Burgert v. Union Pac. R.R., 240 F.2d 207 (8th Cir. 1957). The Kansas statute of limitations provides that actions for personal injuries can be brought only within two years after the cause of action shall have accrued. Kan.Gen.Stat. Ann. § 60–306 (1949). During the time relevant to this appeal, the statute was very strictly construed by the Kansas Supreme Court. That court held on several occasions that the cause of action accrues for the purposes of beginning the two-year period when the injury occurs. The argument that the period should not begin to run until the plaintiff has had a reasonable opportunity to discover the injury has been considered and rejected by the court.[1] See Hill v. Hays, 193 Kan. 453, 395 P.2d 298 (1964); McCoy v. Wesley Hosp. & Nurse Training School, 188 Kan. 325, 362 P.2d 841 (1961); Graham v. Updegraph, 144 Kan. 45, 58 P.2d 475 (Kan.1936); cf. Christensen Grain, Inc. v. Garden City Co-op. Equity Exch., 192 Kan. 785, 391 P.2d 81 (1964).

The complaint in this case was filed November 26, 1963. The trial court denied appellant's motion for a directed verdict, one of the grounds for which was the bar of limitations, and did not submit the question to the jury.

Appellant contends that the injury occurred in the late spring of 1961, when appellee first noticed a very small "golden light" which did not interfere with her vision. However, the medical testimony suggests that transient visual disturbances are not uncommon in patients undergoing Aralen treatment, and nothing in the record establishes that the small "golden light" was other than such a transient disturbance. There is no evidence that appellee suffered irreversible impairment of vision before June 1962, when she barely avoided an automobile accident after failing to see another car, nor that she could have maintained a cause of action for permanent eye injury prior thereto.

Under Rule 8, Fed.R.Civ.P., and Kansas law, the statute of limitations is an affirmative defense which must be pleaded and proved by the asserting party. Kan.Stat.Ann. § 60–208 (1965); Wilson v. Evans, 185 Kan. 520, 345 P.2d 1002 (1959); See Fisher v. Pendleton, 188 Kan. 221, 361 P.2d 864 (1961); Mayfield v. Hesston Mfg. Co., 187 Kan. 91, 353 P.2d 789 (1960) On this issue, appellant neither met its burden of proof, nor presented any evidence generating a fact question for the jury. The ruling of the trial court was not error.

The judgment is affirmed.

---

1. This more liberal view has since been adopted in Kansas by legislative amendment. See Kan.Stat.Ann. § 60–513 (1964).