**Beatrice G. STANBACK, Plaintiff,**

v.

**PARKE, DAVIS & COMPANY, Defendant.**

**Civ. A. No. 78–0240(R).**

United States District Court, W. D. Virginia, Roanoke Division.

Feb. 4, 1980.

Michael K. Quinn, Dodson, Pence, Viar, Young & Woodrum, Roanoke, Va., for plaintiff.

William B. Poff, Woods, Rogers, Muse, Walker & Thornton, Roanoke, Va., for defendant.

## MEMORANDUM OPINION

DALTON, District Judge.

This products liability suit was brought by the plaintiff, Beatrice G. Stanback, seek-

ing compensation for injuries allegedly caused by receiving an injection of Fluogen, an influenza vaccine manufactured by the defendant, Parke, Davis and Company (hereinafter "Parke"). After full discovery and briefing of this case, the parties have narrowed the issues in controversy. There is no question of any defect in manufacture of the drug, nor of its beneficial qualities to the great majority of users. It has been, and continues to be, an effective vaccine against influenza. Unfortunately, Fluogen may produce a very serious side effect in a small percentage of those to whom it is administered. This side effect is Guillane–Barre Syndrome (hereinafter "GBS"), a degenerative condition of the nervous system. The plaintiff contracted GBS after she received two injections of Fluogen, and she alleges under theories of strict liability, breach of warranty, and negligence that she is entitled to damages for the defendant's failure to warn of the danger associated with the use of its drug.[1]

The plaintiff received two half dose injections of Fluogen from Dr. Keith C. Edmunds during the fall of 1976. The first was administered on September 23, 1976 and the second on October 27, 1976. Symptoms of what was subsequently diagnosed as GBS appeared within twenty four hours of this second flu shot. The plaintiff returned to Dr. Edmunds on November 4, 1976 complaining of aching with insomnia, numbness in her fingers and hands, and dizziness. She next sought treatment from Dr. Charles D. Gilliland, M.D., who admitted her to Community Hospital on November 12, 1976 where she was diagnosed as suffering from GBS. The plaintiff was hospitalized for approximately seven months and spent an additional four months in a convalescent facility.

Parke has moved this court to grant summary judgment in its behalf pursuant to Rule 56 of the Federal Rules of Civil Procedure contending that, even assuming existence of a duty, its failure to warn of the association between Fluogen and GBS was not the proximate cause of the plaintiff's illness. Parke relies upon a sworn affidavit from Dr. Edmunds to support its position. This affidavit states that Dr. Edmunds does not deem it necessary to advise patients of the risks involved in receiving a flu shot.[2] Thus, the defendant's argument is that had a warning accompanied the flu vaccine the plaintiff would still have received the flu shot without being apprised of the risk involved. Therefore, the argument runs, it cannot be said that Parke's failure to warn of any association between GBS and Fluogen was the proximate cause of the defendant's injury.

For the purpose of this motion, the court must view the facts in the light most favorable to the plaintiff and determine whether Parke is entitled to summary judgment as a matter of law. Any doubt as to the existence of a genuine issue of fact is to be resolved against the moving party, and documents filed in support of a motion for summary judgment are to be used to determine whether issues of fact exist and *not* to decide the fact issues themselves. *United States ex rel. Jones v. Rundle*, 453 F.2d 147 (3rd Cir. 1971).

The plaintiff has proffered a letter from Dr. Donald B. Sanders, M.D., Associate Professor of Neurology at University of Virginia Medical Center, stating that the asso-

---

1. The court recognizes that the defendant has submitted that strict liability has not been embraced by Virginia courts. However, as indicated in *Chambers v. G. D. Searle Co.*, 441 F.Supp. 377, 380 (D.C.Md.1975), a theory of strict liability is essentially the same as a theory of negligence in product liability cases involving failure to warn. It appears that the only difference is that a strict liability theory would preclude the defendant from asserting certain defenses, none of which Parke has invoked. Therefore, this court deems it unneces-

sary and inappropriate to consider this issue of state law unless compelled to do so.

2. Although warnings of the association between Fluogen and GBS were not given to physicians in 1976, Parke has subsequently included such a warning with its flu vaccine. Dr. Edmunds' affidavit states that he did not advise patients of the risk involved in receiving a flu vaccine in 1976 and, after the inclusion of the GBS warning, he still does not communicate any such warning to his patients.

ciation between flu inoculation and GBS has long been known and indicating that there was a causal relationship between the injection of Fluogen received by the plaintiff and her subsequent contraction of GBS. As a starting point in the resolution of the motion before it, this court thus must assume that Parke knew or should have known of the relationship between Fluogen and GBS and that the administration of Fluogen to the plaintiff precipitated her illness.[3]

It is well settled that the manufacturer of an ethical drug[4] has a duty to provide timely and adequate warnings to the medical profession of any dangerous side effects produced by its drugs of which it does, or should, know.[5] *E. g., Sterling Drug, Inc. v. Cornish*, 370 F.2d 82 (8th Cir. 1966); *Davis v. Wyeth Laboratories, Inc.*, 399 F.2d 121 (9th Cir. 1968); *Chambers v. G. D. Searle and Co.*, 441 F.Supp. 377 (D.C. Md.1975) aff'd 567 F.2d 269 (4th Cir. 1977); *Vaughn v. G. D. Searle and Co.*, 536 P.2d 1247 (Or.1975); *McEwen v. Ortho Pharmaceutical Corp.*, 528 P.2d 522 (Or.1974); *Bine v. Sterling Drug, Inc.*, 422 S.W.2d 623 (Mo. 1968). Although the duty of the ethical drug manufacturer to warn is limited to those dangers which the manufacturer knows or should know are inherent in the use of the drug, the manufacturer is treated as an expert in its particular field and is under a continuing duty to notify the medical profession of any side effects subsequently discovered from its use. *Schenbeck v. Sterling Drug, Inc.*, 423 F.2d 919 (8th Cir. 1970); *McEwen v. Ortho Pharmaceutical Corp.*, 528 P.2d 522 (Or.1974). A failure to adequately warn a doctor exposes the ethical drug manufacturer to liability to the patient for breach of its duty.[6] *McEwen v. Ortho Pharmaceutical Corp., supra* at 529; *Schenebeck v. Sterling Drug, Inc., supra* at 923. Viewing the facts of this case in the light most favorable to the plaintiff, Parke knew or should have known of the association between Fluogen and GBS. This placed upon Parke a duty to warn the medical profession of this danger—a duty which was breached. The facts also indicate that the injection of Fluogen was the cause in fact of the plaintiff's illness.[7] Thus, the only issue before the court is whether or not the defendant's failure to warn the medical profession of the danger associated with Fluogen was the proximate cause of the plaintiff's injury.[8]

The defendant apparently contends that Dr. Edmunds' admission that even had he received a warning he would not have transmitted it to the plaintiff was an intervening proximate cause which ex-

3. Due to a dearth of Virginia case law on the issue confronting us today, the court will look to the law of other jurisdictions for elucidation.

4. The term ethical drug is used to distinguish drugs which may be dispensed only by a doctor or with his permission from proprietary or patent drugs which may be sold over the counter.

5. This duty extends to both the prescribing and treating physician. *Vaughn v. G. D. Searle and Co.*, 536 P.2d 1247 (Or.1975).

6. The drug manufacturer has the duty to warn the doctor rather than the patient. The manufacturer's compliance with this duty enables the physician to balance the risk of possible harm against the benefits to be gained by the patient's use of that drug. Moreover, as observed by the court in *Sterling Drug, Inc. v. Cornish*, 370 F.2d at 85:

> ... [T]he purchaser's doctor is a learned intermediary between the purchaser and the manufacturer. If the doctor is properly warned of the possibility of a side effect in some patients, and is advised of the symptoms normally accompanying the side effect, there is an excellent chance that injury to the patient can be avoided. This is particularly true if the injury takes place slowly * * *

7. The plaintiff, under any of her theories of liability, still has the burden of establishing that the defendant's breach of its duty to warn was the proximate cause of her injury. Kimble and Lesher, *Products Liability*, § 251, p. 273 (1979).

8. The defendant's brief raised other bases for a granting of summary judgment; however, it now appears to have abandoned such arguments and relies solely upon the issue of proximate cause. Should any doubt exist, the court is of the opinion that neither approval of its labelling by the Federal Drug Administration nor the fact that the danger threatens a statistically small percentage of users will, as a matter of law, relieve a drug manufacturer of its duty to warn of dangers it knows or has reason to know. *See McEwen v. Ortho Pharmaceutical Corp.*, 528 P.2d at 529 530, 534.

onerates it from any liability flowing from its failure to warn. Such a contention is contrary to the better reasoned decisions which have considered the point. *See McCue v. Norwich Pharmaceutical Company*, 453 F.2d 1033 (1st Cir. 1972); *Schenebeck v. Sterling Drug, Inc.*, 423 F.2d 919 (8th Cir. 1970); *Sterling Drug, Inc. v. Cornish*, 370 F.2d 82 (8th Cir. 1966); *Yarrow v. Sterling Drug, Inc.*, 263 F.Supp. 159 (1967); *Vaughn v. G. D. Searle Co.*, 536 P.2d 1247 (Or.1975); *McEwen v. Ortho Pharmaceutical Corp.*, 528 P.2d 522 (Or.1974); *Bine v. Sterling Drug, Inc.*, 422 S.W.2d 623 (Mo. 1968); *But see Douglas v. Bussabarger*, 73 Wash.2d 476, 438 P.2d 829 (1968). These decisions, apparently premised upon the doctrine of foreseeability, state that a drug manufacturer's negligence precludes it from asserting the subsequent act of an inadequately warned doctor as an intervening, superceding cause and hold that the original wrongdoer should be liable, notwithstanding the intervening act. *See McEwen v. Ortho Pharmaceutical Corp., supra* at 538; *Sterling Drug, Inc. v. Cornish, supra* at 85; Kimble and Lesher, *Products Liability*, § 206, pp. 225–226 (1979); Restatement (Second) of Torts § 447 (1965). In view of this widely accepted rule, this court is of the opinion that the defendant's negligence is not excused by Dr. Edmunds' acts or omissions. This is not to say, of course, that a properly warned and yet negligent physician would not insulate a drug manufacturer from liability. *See McCue v. Norwich Pharmaceutical Co.*, 453 F.2d 1033 (1st Cir. 1972).

■ Although this court holds that Dr. Edmunds' affidavit does not act to supercede the defendant's negligence, we are also of the opinion that the plaintiff has yet to present sufficient proof of causation to allow this case to proceed to trial. The plaintiff must establish two elements of causation. First, she must prove that the ingestion of the defendant's drug produced her illness. Second, she must prove that had an adequate warning been given a reasonable physician would have treated her in a manner which would have avoided or reduced the severity of her injuries. *McEwen v. Ortho Pharmaceutical Corp., supra* at 538. *Vaughn v. G. D. Searle and Co.*, 536 P.2d at 1248; *Chambers v. G. D. Searle Co.*, 441 F.Supp. at 384–385.

As to the first factor, the plaintiff has presented evidence from Dr. Sanders that the injection of Fluogen precipitated her attack of GBS. However, she has presented no evidence that, if adequate warnings had been given, either a reasonably prudent physician would not have administered the flu shot in the first place or would have subsequently recognized symptoms allowing him to treat and arrest her GBS before it reached its eventual level of severity. Unless the plaintiff is able to produce such evidence, she will have failed to establish sufficient evidence to survive a motion for summary judgment. *See Vaughn v. G. D. Searle and Company*, 536 P.2d at 1249, n. 4.[9]

Since plaintiff has not yet addressed the issue of whether the defendant's failure to warn was the cause in fact of her injury,[10] the court will hold this motion in abeyance for an additional 30 days from the date of this opinion to allow the plaintiff to submit any evidence which may establish such causation.

---

9. At first blush, it may appear anomalous to hold that the foreseeable negligence of a physician will not exonerate an ethical drug manufacturer from liability flowing from its failure to warn and then state that the plaintiff must prove that a reasonably prudent doctor would have treated her differently had an adequate warning been given. However, in the first instance, the issue is the foreseeability of the physician's act, and in the second the sole question addressed is whether the defendant's negligence was the cause in fact of the plaintiff's injury.

10. The plaintiff has only presented evidence that an injection of Fluogen caused her to contract GBS. The paramount question of whether the defendant's failure to warn was the cause of her disease has not been addressed. To hold the defendant liable in such circumstances would be an imposition of *absolute* liability.