Beatrice G. STANBACK, Plaintiff,

v.

PARKE, DAVIS & COMPANY,
Defendant.

Civ. A. No. 78–0240(R).

United States District Court,
W. D. Virginia,
Roanoke Division.

Oct. 1, 1980.

Michael K. Quinn, Dodson, Pence, Viar, Young, & Woodrum, Roanoke, Va., for plaintiff.

William B. Poff, Woods, Rogers, Muse, Walker & Thornton, Roanoke, Va., for defendant.

## MEMORANDUM OPINION

DALTON, District Judge.

The plaintiff, Beatrice G. Stanback, brought this products liability suit seeking compensation for injuries allegedly caused by an injection of Fluogen, an influenza vaccine manufactured by the defendant, Parke, Davis and Company (hereinafter "Parke"). After full discovery and briefing of this case, the parties have narrowed the issues in controversy. As a result, there is no contention that there exists any defect in the manufacture of the vaccine. Similarly, there is no dispute that the drug is a beneficial commodity to the great majority of users. On the contrary, the product has been and continues to be an efficacious vaccine against influenza. In a small percentage of persons to whom Fluogen is administered, however, the drug produces a very serious side effect. Specifically, this adverse reaction is termed Guillane–Barre Syndrome (hereinafter "GBS") and is typified by a degenerative condition of the nervous system. The present plaintiff experienced GBS after she received two injections of Fluogen, and she alleges under theories of strict liability, breach of warranty, and negligence that she is entitled to damages for the defendant's failure to warn of the potential dangers associated with the use of the vaccine.

The plaintiff was inoculated with two half–dose injections of Fluogen vaccine by Dr. Keith C. Edmunds during the fall of 1976. The first installment was administered on September 23, 1976, and the second on October 27, 1976. Within twenty hours of the second injection, symptoms of what was subsequently diagnosed as GBS appeared. On November 4, 1976 the plaintiff returned to Dr. Edmunds' office, complaining of aching with insomnia, numbness in her hands and fingers, and dizziness. The plaintiff then sought treatment from Dr. Charles D. Gilliland, M.D.; subsequently, he admitted her, after examination, to Community Hospital in Roanoke, Virginia on November 12, 1976 where she was diag-

nosed as suffering from GBS. Following the diagnosis, the plaintiff was hospitalized for approximately seven months and spent an additional four months following hospitalization convalescing.

Parke has moved this court pursuant to Rule 56 of the Federal Rules of Civil Procedure to grant summary judgment in its behalf. The defendant's contention is that, even granted the existence of a duty, its failure to warn of the association between Fluogen and GBS was not the proximate cause of the plaintiff's illness. In order to support its motion, Parke relies upon a sworn affidavit from Dr. Edmunds. In effect, this affidavit states that Dr. Edmunds does not deem it necessary to advise patients of the risks involved before administering a flu vaccination. Dr. Edmunds' affidavit states that he did not advise patients of the risk involved in being inoculated with Fluogen in 1976 and that he continues not to communicate warnings even though Parke has subsequently included a GBS warning to the physician with its product. Utilizing this statement, the defendant argues, in essence, that even if Parke had included a warning with its product, the present plaintiff still would have been inoculated without being warned of the potentially adverse consequences. In summary, the defendant argues that the essential causal relationship between Parke's alleged failure to warn and the plaintiff's injury is lacking where it is demonstrated that Dr. Edmunds would have, nevertheless, administered the injections with or without the inclusion of the warning.

Ruling on the defendant's motion for summary judgment, this court reached the conclusion enunciated in *Stanback v. Parke, Davis & Company*, Civil Action No. 78–0240(R) (Memorandum Opinion). Viewing the facts in a light most favorable to the plaintiff and considering a letter submitted by the plaintiff from a Donald M. Sanders, M.D., Associate Professor of Neurology at the University of Virginia Medical Center,

asserting a long established recognition of the adverse consequences of the vaccine, the court assumed for the purposes of the motion that Parke knew or should have known of the reaction potential. In addition, the court assumed that the injection precipitated her injury. This court further determined that, given the dearth of germane Virginia caselaw, persuasive authority in other jurisdictions established that Parke, as the manufacturer of an ethical drug, had a duty to provide adequate warnings of adverse consequences to prescribing and treating physicians.[1] *See, Stanback v. Parke, Davis & Company,* supra, citing *Sterling Drug, Inc. v. Cornish,* 370 F.2d 82 (8th Cir. 1966); *Davis v. Wyeth Laboratories, Inc.,* 399 F.2d 121 (9th Cir. 1968); *Chambers v. G. D. Searle and Co.,* 441 F.Supp. 377 (D.C.Md.1975) *aff'd* 567 F.2d 269 (4th Cir. 1977); *Vaughn v. G. D. Searle and Co.,* 272 Or. 367, 536 P.2d 1247 (1975); *McEwen v. Ortho Pharmaceutical Corp.,* 270 Or. 375, 528 P.2d 522 (1974); *Bine v. Sterling Drug, Inc.,* 422 S.W.2d 623 (Mo.1968). Citing *Schenebeck v. Sterling Drug, Inc.,* 423 F.2d 919 (8th Cir. 1970), this court further determined that a failure to adequately warn a doctor constitutes a breach on the part of the ethical drug manufacturer. Thus, the court, for purposes of the motion, assumed that Parke knew or should have known of the adverse consequences associated with Fluogen, that Parke breached its duty to warn, and, to reiterate, that the injection of the Fluogen was the cause in fact of the plaintiff's injuries.

The court ascertained that, contrary to the defendant's assertion, a drug manufacturer's negligence precludes it from asserting the subsequent act of an inadequately warned physician as an intervening, superseding cause, and that liability thus remains with that manufacturer. *See Stanback v. Parke, Davis and Company,* supra, citing *McEwen v. Ortho Pharmaceutical,* supra, 528 P.2d at 538; *Sterling Drug, Inc. v. Cornish,* supra at 85; Kimble and Lesher, *Products Liability,* at pp. 225–226 (1979); Restatement (Second) of Torts § 447 (1965).

1. The term ethical drug is used to distinguish drugs which may be dispensed only by a physician or with his permission from proprietary or patent drugs which may be sold over the counter.

Although this court concluded that the impact of Dr. Edmunds' act did not act to supersede the defendant's negligence, it found that the plaintiff had not produced sufficient proof of causation to merit this case proceeding to trial. In that opinion, the court formulated a "two–prong" analysis governing the quantum of proof required for adequate causation. First, it is incumbent for the plaintiff to prove that the injection of the drug precipitated her illness; this court found that the plaintiff provided sufficient evidence to fulfill this initial causation requirement. In addition, the plaintiff was obligated to prove that had an adequate warning been included, a reasonable physician would have treated her in a manner which would have avoided or reduced the severity of her injuries. *See Stanback v. Parke, Davis and Company,* supra, p. 4 and authority cited therein. Thus, the court admonished the plaintiff to establish "cause in fact," as distinguished from "proximate cause," by demonstrating that if an adequate warning were provided, a reasonably prudent physician would not have administered the flu shot in the first place, or that a reasonably prudent physician would have subsequently recognized symptoms of the reaction in time to ameliorate or mitigate its severity. Accordingly, this court held the motion for summary judgment in abeyance, providing the plaintiff an opportunity to produce evidence that the failure to warn was the cause in fact of her injury. Following this decision and directive on causation, both parties filed supplemental memoranda and presented further argument; in addition, the plaintiff submitted the deposition of Michael A. W. Hattiwick, M.D. It is now appropriate for the court, in response to the motion for summary judgment, to evaluate both the quantum of evidence the plaintiff produced on causation and to address the pertinent issues raised in the memoranda.

Initially, the court notes that the deposition of Dr. Hattiwick (hereinafter "Hattiwick deposition") does not enable the plaintiff to meet the test formulated by the court in its Memorandum Opinion. On the contrary, Hattiwick's deposition reveals that a prudent physician, either with or without the aid of the GBS warning, would have given "a recommendation to vaccinate her and [it] was appropriate and I [Hattiwick] would have recommended it, myself." Hattiwick deposition, p. 42. Further detrimental to the plaintiff sustaining her burden of causation and prevailing on the motion is Dr. Hattiwick's statement that "the disease, of course, basically tends to progress more or less independent (sic) of what the physician does." *See* Hattiwick deposition, p. 20. Given this evidence, it is difficult to discern how a warning would have increased the physician's capacity to recognize the reaction and administer treatment to mitigate its severity. Thus, it would appear that the plaintiff has failed to establish the basic causual relationship, uniformly considered a precondition to recovery, between the defendant's alleged breach of duty and the plaintiff's subsequent injuries as this court has defined that requirement. Therefore, the plaintiff has failed to establish the basic element of causation which is a critically necessary component under any conceivable theory of liability, whether denominated as negligence, warranty, or strict liability.[2]

Given that the court's above–stated causation formulation was succinctly stated in our Memorandum Opinion and was addressed by both parties in their second supplemental memoranda, some further elaboration is appropriate. On the other hand, it is superfluous to expand beyond the crux of the formulation: the axiomatic rule that causation is an indispensable element of the plaintiff's case. As previously stated, in the present case that formulation manifests itself as follows: If a reasonable, prudent physician would have still administered Fluogen to the plaintiff, regardless of the warning, then Parke's alleged breach of duty in failing to warn cannot be the cause

---

**2.** The court notes that the defendant has submitted that strict liability has not been adopted by the Virginia courts.

in fact of the plaintiff's injury. In simple, generalized terms, the causation formulation requires that defendant's negligent act to have played some part in affecting the plaintiff's injury. Thus, despite the inherent intricacies in the evidence of the case at bar, the causation requirement remains an irreducible prerequisite to recovery. Regardless of the defendant's attempt to categorize the physician's intervention under the "proximate cause" rubric, *See McCue v. Norwich Pharmaceutical Company*, 453 F.2d 1033 (1st Cir. 1972); *Schenebeck v. Sterling Drug, Inc.*, 423 F.Supp. 919 (8th Cir. 1970); *Sterling Drug, Inc. v. Cornish*, 370 F.2d 82 (8th Cir. 1966); *Yarrow v. Sterling Drug, Inc.*, 263 F.Supp. 159 (8th Cir. 1967); *Vaughn v. G. D. Searle Co.*, 272 Or. 375, 536 P.2d 1247 (1975); *McEwen v. Ortho Pharmaceutical Corp.*, 270 Or. 375, 528 P.2d 522 (1974); *Bine v. Sterling Drug, Inc.*, 422 S.W.2d 623 (Mo.1968); Merrill, *Compensation for Prescription Drug Injuries*, 59 Va. L.Rev. 1 at 45 (1973), the peculiar facts in this case indicate that the proper analysis is the causation test alluded to above.

The relevant case law buttresses our causation analysis. In *McEwen v. Ortho Pharmaceutical*, 270 Or. 375, 528 P.2d 522 (1976) the court adjudicated an action brought against two manufacturers of ethical drugs whose users, alleging an insufficient warning to their physicians, became blind after ingestion. Addressing the issue of cause in fact as a necessary precondition for recovery, the court ascertained that "the final element of the plaintiff's cause of action is proof that each defendant's failure to warn was, in fact, a substantial factor in producing the damage complained of." 528 P.2d at 538. Presently pertinent, the analysis employed reveals that where, as in this case, there was no evidence to "permit the jury to find that if adequate warnings had been given, plaintiff's treating doctors probably would have discontinued her use of the drugs . . .", dismissal would be proper. *Id.*, 528 P.2d at 539. Similarly, the court in *Vaughn v. G. D. Searle & Company*, 536 P.2d 1247 at 1249 (Ore.1975), specifically endorsed the *McEwen* causation analysis where there was no evidence showing that the plaintiff–user advised her physicians of symptoms that would alert them to an adverse reaction, even if a warning were provided, and there was no evidence that a properly warned physician would have responded differently in treating the plaintiff. 536 P.2d 1247 at 1249 (Ore.1975). Again, the court found that the requisite causal relationship between the defendant's negligence and the plaintiff's injury had failed to be established. *See also Lindsay v. Ortho Pharmaceutical*, 481 F.Supp. 314 (E.D.N.Y.1979); *Chambers v. G. D. Searle & Co.*, 441 F.Supp. 337 (D.Md.1975).

Counsel for the plaintiff in its Second Supplemental Memorandum has attempted to demonstrate the inapplicability of this causation analysis by suggesting that the court's placement of the "reasonably prudent" physician in the causal chain is misplaced. The defendant articulates this argument as follows:

> However, depending upon the plaintiff's evidence regarding the distribution of Fluogen and the method and circumstances of its dispensation, a jury could reasonably find that Fluogen is not a "prescription drug" for the purpose of the warning requirement because defendant knew or had reason to know that Fluogen is often dispensed without evaluation of the medical risks by a physician; and that, therefore, defendant's duty was to warn plaintiff, thereby removing consideration of the physician's role for the causal chain. Plaintiff's Second Supplemental Memorandum, p. 14.

It is conceded that evidence illustrating the absence of a physician's evaluation of the medical risks involved in inoculation of an individual patient would radically alter both the above–stated causation calculus and the scope of Parke's duty to warn. However, the extracted proportion of Dr. Edmunds' deposition cited in Plaintiff's Second Supplementary Memorandum does not provide such evidence of a lack of physician–risk–evaluation to warrant submission of the issue to the jury. *See* Plaintiff's Second Supplementary Memorandum, pp. 8–9. On the contrary, the plaintiff's own

evidence reveals that inherent in a physician's decision to acquiesce to a patient's request for an influenza vaccination is a definite risk–benefit calculation. *See* Hattiwick Deposition, p. 17. In consideration of this evidence, the court finds it ill–advised to adopt a view of causation based on factual situations lacking the present element of physician discretion. *Cf. Reyes v. Wyeth Laboratories*, 498 F.2d 1264 (5th Cir. 1974).

Accordingly, the defendant's motion for summary judgment is granted.